SWAIN v. SEAMENS.

1. A contract to build, on a lot sold upon mortgage, a mill fifty feet wide by
   one hundred and fifty long, is not, as a proposition of law, substantially
   complied with by building one that is seventy-eight feet wide by a hun-
   dred long, even though the purpose of the contract was to give the
   vendor security for the purchase-money of the lot, and though the mill
   of the latter dimensions have cost more and be better adapted to the pur-
   poses intended than such a one as was contracted for.
2. But if the vendor, having made an agreement that upon a mill of the
   former dimensions being built on the lot sold, he will accept policies of
   insurance on it for the amount of another mortgage collateral to one
   given on the property sold, and he does accept such policies, he cannot
   decline to enter satisfaction on such other mortgage because the mill was
   not of the dimensions contracted for.   He waives by such acceptance of
   the policies all right to object to the variation in the construction.
3. Where a person tacitly encourages an act to be done, he cannot afterwards
   exercise his legal right in opposition to such consent, if his conduct or
   acts of encouragement induced the other party to change his position,
   so that he will be pecuniarily prejudiced by the assertion of such adver-
   sary claim.
4. The statute of frauds cannot be set up as a defence to the performance of
   one formal item of an agreement, where the contract has been fully per-
   formed by the party asking such performance, and, except as to such
   remaining formal item, by the other party also.

APPEAL from the Circuit Court for Wisconsin, in which
court Seamens and others filed a bill against Swain, praying
that a mortgage executed to him, Swain, by Medbery and
wife, on certain lots, of which he, Seamens, and the others
were now owners, in Wisconsin, might be cancelled.

It appeared that in 1855, Swain sold to Medbery and

one Aldrich real estate in Michigan for $52,400, of which $10,000 was paid in cash, and the balance, $42,400, secured by a mortgage on the lands, payable in instalments at dif-. ferent times; and that on this Michigan land, foundations had been made in the previous autumn, by driving piles for the erection of a saw-mill *fifty by one hundred and fifty feet in size;* that Medbery was then the owner of certain lots in Wisconsin; and that on the same day and in pursuance of articles of agreement preceding the sale, to give additional security to the extent of $6666.66, he and his wife executed to Swain a mortgage on *these* lots as additional security.

On the Wisconsin mortgage, Swain, on the same day that it was given, indorsed the following stipulation, which gave rise to this suit:

"It is hereby agreed, that if within two years from this date the large saw-mill, *fifty by one hundred and fifty feet in size,* shall be *properly built and completed, upon the foundation commenced last fall,* by driving piles, to accept in place of the within mortgage, *security* in proper fire insurance policy, or policies, on said large saw-mill, and thereupon to discharge the within mortgage."

The stipulation above made was in pursuance of a contract made by the purchasers in the previous articles of agreement, to keep the buildings erected, and the large saw-mill to be erected, upon the premises, insured in some safely reputed fire insurance company or companies against fire, and that they should assign the policy or policies to Swain, and that in default thereof it should be lawful for him, Swain, to effect the insurance himself, and that the premiums and the costs and charges of his doing so, should be a lien on the mortgaged premises.

THE BILL alleged that subsequently to the execution of the agreement indorsed by Swain on the mortgage, and within the two years, there was built and completed upon the Michigan lands, and upon the foundation referred to in the said agreement, a large saw-mill, not of 50 by 150 feet, but of 78 by 100; this mill, however, *being larger and of greater value and better adapted to the purposes intended than one of the*

*dimensions originally contemplated;* and that the said mill, as built and completed, was *assented to and accepted by Swain as a compliance with the said written agreement* indorsed on the Wisconsin mortgage; that in May, 1856, Medbery and Aldrich caused the new saw-mill to be insured in different companies named, to the extent of $6000; and that these policies of insurance were duly transferred and delivered to Swain, *and accepted and assented to by him as a compliance with the agreement,* and that he had them in possession; that in October, 1857, Swain caused the new mill to be further insured for one year in the name of Medbery & Aldrich, for his own use and benefit; that in September, 1858, he again caused the new saw-mill and other buildings on the premises to be again insured for one year in the name of Medbery & Aldrich, but for his own security, and paid out for premium $210; that all these insurances mentioned were obtained at the request of Swain, with the consent of Medbery & Aldrich, and upon the understanding *that they should reimburse him the premiums;* that in November, 1858, Swain and Medbery & Aldrich accounted respecting the amount due upon the mortgage, and that Medbery & Aldrich then paid him $15,236.06, in which sum was included, as paid by Swain during 1857 and 1858 for premiums on the new saw-mill and other property mentioned in the mortgage, the sum of $446.50, and interest.

That " during the building and erection of the said large saw-mill upon the premises referred to in the written agreement aforesaid by said Medbery & Aldrich, the said defendant, Swain, was present at different times, and was informed by said Medbery & Aldrich, or one of them, of the intended or the then variation in the dimensions of said saw-mill from 50 by 150 feet, as specified in said written agreement, and that the said mill, as was then being built or was then completed, would be of greater value and better adapted for the uses and purposes intended than it would be if built of said dimensions as specified in said written agreement, and that the said defendant was then and there asked by said Medbery & Aldrich, or one of them, to consent to

such alteration, and accept the mill as then being built, and since completed, in lieu of the one mentioned in said written agreement, and that the said defendant *did then and there agree to accept, and did accept the said mill so being built,* and afterwards completed, in lieu of the one mentioned in said written agreement, and as a compliance on the part of said Medbery & Aldrich with the said written agreement on his or their part."

The mortgage on the Michigan property not being paid, Swain foreclosed it, and on a decree, finding $22,464 due, sold and purchased the premises for $19,600.

THE ANSWER denied that Medbery & Aldrich completed the mill substantially according to the agreement; denied that Swain consented to or acquiesced in the departure from the plan for constructing the mill; and, admitting that Swain did accept policies of insurance upon the mill which was built, denied that he did so in pursuance of the agreement, or that he accepted the policies as a compliance on the part of Medbery & Aldrich.

The statute of frauds of Wisconsin, it may be necessary here to state, enacts,* that " no estate, or interest in lands, . . . nor any power over or concerning lands, or in any manner relating thereto, shall be *created* or *surrendered,* . . . unless by deed or conveyance in writing, &c.;" and that " the term lands," shall be construed as coextensive in meaning with " lands, tenements, and hereditaments;" and the terms " estate and interest in lands," to embrace *every* estate and *interest,* freehold and chattel, legal and equitable, present and future, vested and contingent in lands as above defined.

The right to have the cancellation prayed for, depended therefore upon the following questions:

1. Was the mill constructed in substantial conformity with the agreement?

2. If constructed differently, did Swain consent to or acquiesce in the departure from the original plan; or

---

* Code of 1858, pp. 613, 615.

3. Did Swain, after its construction, accept policies on the mill in pursuance of the agreement?

If any one of these questions were answered in the affirmative, then, obviously the mortgage was to be cancelled.

4. Unless, indeed, there was something in the statute of frauds, as above quoted, which interfered with such a conclusion.

The second and third questions were obviously questions of pure fact, and the court below, which decreed the cancellation, considered, as this court (on appeal from that decree) also considered, that the evidence made it clear, on direct proofs, that Swain had in fact acquiesced in the departure in the building of the mill, and moreover that after its construction he had accepted policies, by this means also waiving any objection to such variation.

On the two points of law it was contended by *Mr. J. M. Howard, for the appellant:*

1. That the contract was clear and specific to *properly* build and complete a mill of a fixed, intelligible, and practicable size; and that this being so the court was bound to hold the parties to it; and so bound whether the mill really built was of greater value or of less than the one contracted to be built, the creditor having a right to stipulate for just such a mill as he pleased.

2. That the agreement to modify the stipulation as to the dimensions of the mill was an agreement which did, in truth, provide for the " surrender " of one " estate or interest in lands " and for the " creation " of another, and was therefore void within the Wisconsin statute of frauds.

*Mr. M. H. Carpenter, contra:*

1. What was the spirit of the agreement? Swain was not contracting for a mill which he was to use. He had sold the land. What he had in view was security, and security alone. Precise dimensions were of no consequence to him, value was everything; because upon value depended his security, which was the subject of the agreement. The literal re

quirements of the agreement would have been satisfied by the construction of a mill of any value, or of no value, provided it were 50 by 150 feet, for this is the only specification in the agreement in regard to the mill. This, however, would not have satisfied the spirit of the agreement. But if a worthless mill, 50 by 150 feet, would not have done this, then a mill of any dimensions, but of value sufficient to support an insurance equal to $6666.66, does do it; does satisfy this spirit. In other words, the true spirit of the contract, so far as regards Swain, was value, not form; and, if the mill actually constructed was of greater value than one constructed 50 by 150 feet would have been, and it could be insured to the amount of $6666.66, then such mill satisfied the agreement in its true spirit and according to the intention of the parties. But the point is not important. We do not urge it. The evidence, which the court will see absolutely demands affirmative answers to the second and third questions, renders any discussion of this first one useless. If Swain accepted the mill either by words, or by silence as expressive as words, or by receiving policies upon it, there is an end of the case.

*As to the statute of frauds,* no question arises under it. The point seems to be faintly urged. A variation in an agreement as to the size of a saw-mill, is not a surrender of or a creation of an interest in land. If it were, then without insisting on what cases assert, that a written or sealed instrument, even when within the statute, may be varied as to the time or manner of its performance, or may be waived altogether by a subsequent parol agreement, the conclusive answer here is, that the contract was fully executed on the side of both parties; and that Swain, after standing by and witnessing the completion of the mill with its actual dimensions, and agreeing to it, is equitably estopped from objecting to cancel the mortgage upon the ground of change in the plan. The doctrine that where a person encourages an act to be done, or in any way accepts it when done, he cannot afterwards exercise his legal right in opposition to such consent, is perfectly settled, and is applied in all cases where a party has

by word or act given others reason to believe that if he had a right, he intended to waive it, and where such others would be prejudiced by his asserting his right. Authorities need not be cited for this horn-book law. .

Mr. Justice CLIFFORD delivered the opinion of the court.

Subsequent to the removal of the case from the State court to the Circuit Court a new bill of complaint was filed by the consent of the respondent, so that it is not necessary to refer to the proceedings in the suit before the petition for the removal was granted.

Swain, the appellant and respondent, owned certain real estate situated in the State of Michigan, and on the fourteenth of April, 1855, he sold the same to John W. Medbery and James F. Aldrich for the consideration of fifty-two thousand dollars, as appears by the pleadings.

Pursuant to the terms of the sale the purchasers paid ten thousand dollars in cash when the deed was executed, and gave back a mortgage on the same real estate to secure the balance of the purchase-money, which was payable in instalments at different times. Medbery at that time was the owner of an undivided third part of certain lots situated in Milwaukee, in the State of Wisconsin, together with a flouring-mill erected thereon, called the Empire Mill, and he and his wife, on the same day and as a part of the same transaction, gave a mortgage of the same lots and mill to the appellant as additional security for the balance remaining unpaid of the purchase-money of the first-mentioned real estate.

Prior to the purchase and sale of the Michigan real estate the foundation for a saw-mill, fifty feet by one hundred and fifty feet, to be erected on the premises, had been commenced, and the mortgagee, at the time the second mortgage was executed as additional security, stipulated and agreed with the mortgagors therein that if the mortgagors in the first mortgage built and completed the saw-mill there described in a proper manner upon the foundation so commenced, within two years from that date, he would accept as security in the place of that mortgage proper fire insurance policies on said

saw-mill, and would thereupon cancel and discharge the said second mortgage. Reference is made to the stipulation for its exact phraseology, as more fully set forth in the record, and it will be seen that it was duly executed under the hand and seal of the appellant, and was indorsed at large on the second mortgage which was given as additional security.

Substantial compliance on the part of the mortgagors in the first mortgage with all the conditions of that agreement, and within the time therein specified, is set up by the appellees and complainants; and they also allege that the mortgagors in the second mortgage subsequently sold and conveyed, by deed of warranty, all their interest in and to the said lots and mill, and that they, the complainants, afterwards became the purchasers of the same lots and mill; and they allege that at the time the suit was commenced they were the owners of the same in fee, as alleged in the bill of complaint. They do not claim that the mill built and completed, as aforesaid, was of the precise dimensions mentioned in the agreement, but they allege that it was of larger dimensions and of greater value, and that it was better adapted to the purposes to be accomplished; and they aver that the mill as built and completed was recognized and accepted by the appellant as a compliance with that agreement.

Based on these and other allegations the prayer of the bill of complaint is that the mortgage of the lots and mill, called the second mortgage for the purpose of identification, may be ordered and decreed to be cancelled and discharged, and that the complainants may have such other and further relief as the nature of the case shall require.

I. Special reference to the evidences of title exhibited by the complainants is unnecessary, as the parties before the hearing in the Circuit Court entered into a written stipulation that the complainants at the time the bill of complaint was filed were the owners in fee of the lots in question and of the flouring-mill located on the premises. Possessed of the title to the lots and mill as previously held by the mortgagors, the claim of the complainants is that the mortgage thereon held by the appellant should be cancelled and dis-

charged, because, as they insist, the conditions of the stipulation and agreement indorsed on the same, providing for that result, have all been fulfilled.

Such is the claim of the complainants, but the respondent denies that proposition and every element of it, and he contends that the complainants have no claim to any relief, because he insists that the mortgagors in the first mortgage never fulfilled any of the conditions specified in that stipulation and agreement; that they never built and completed the saw-mill therein described; and he expressly denies that they ever procured the policies of insurance, as alleged, or that he ever accepted the mill which they did build on the premises as a compliance with that stipulation and agreement.

Both parties were fully heard in the Circuit Court, and a decree was entered for the complainants cancelling and discharging the mortgage, and the respondents appealed to this court.

II. Relief cannot be decreed to the complainants on the ground that the mortgagors in the principal mortgage built and completed a saw-mill on the premises embraced in that mortgage, of the dimensions specified in the written stipulation and agreement which is indorsed on the second mortgage, as the bill of complaint concedes that they did not, in terms, comply with that condition, and the complainants do not claim in argument that the saw-mill which those parties built thereon was of that form or of those dimensions. Strict compliance, therefore, with the conditions of the stipulation cannot be maintained, as the proposition finds no support either in the pleadings or proofs, but is contradicted by both in every part of the record.

Proof of strict performance failing, the next proposition of the complainants is that the saw-mill which those mortgagors did build constitutes a substantial compliance with the conditions of that stipulation, but it is not possible to decide as a conclusion of law that a saw-mill seventy-eight feet in width by one hundred feet in length is a substantial compliance with an agreement which required that the saw-mill to

be constructed should be of the dimensions described in that instrument, even though it be shown that it cost more and was of greater value and better adapted to the purposes to be accomplished, as the appellant having stipulated that the saw-mill to be built should be fifty feet in width by one hundred and fifty feet in length, had a right to stand upon the contract and to insist that it should be fulfilled according to its terms.

Substantial performance, it is true, is all that is required to satisfy any such agreement, and it may also be conceded that in the adjudication of controversies growing out of building contracts slight differences in the dimensions between the building constructed and the terms of the contract may, under many circumstances, be overcome by a reasonable application of that rule, but the differences in the case before the court are far too great to fall within that principle, as the effect would be to make a new contract and substitute it in the place of the stipulation executed by the parties.

III. Suppose neither of those propositions can be sustained, still the complainants contend that the decree of the Circuit Court should be affirmed, because they insist that the appellant acquiesced in the departure from the plan and dimensions as specified in the written instrument, and that he expressly accepted the said mill which those parties built and completed as a compliance with that stipulation.

Considerable conflict exists in the proofs upon that subject, and in view of that fact it becomes necessary to examine with some care the circumstances attending the transaction as bearing upon the probabilities of the case. Duplicate agreements were executed between the parties to the before-mentioned deed of conveyance for the purchase and sale of the lands therein described six months before the deed of the same and the mortgage back, as aforesaid, were signed and delivered, by which the appellant agreed to sell, and the grantees in the deed and the mortgagors in the mortgage back agreed to purchase, those tracts of land, with certain exceptions, which are unimportant in this investigation, and

also with certain reservations, of which two only need be noticed:

1. He reserved the house where he resided and the premises connected therewith for his benefit for one year from the date of the agreement.

2. Also the use and occupancy of the shop and fixtures connected with the same then in the possession of his brother, a deaf-mute, together with the use of the water "as now used, or in a similar way," so long as the said brother chooses to occupy the same, " to be free of rent, let, or unnecessary hindrance, otherwise than if in the way of other important improvements it may be removed" sufficiently to be out of the way, "and where he can have the same use and privileges as before."

By the terms of the agreement as amended the purchasers were to pay ten thousand dollars in cash, and they were to give their bond for forty-two thousand dollars for the balance of the purchase-money, together with a mortgage back of the whole real estate purchased to secure the payments, and they also covenanted to give " good and satisfactory security upon other property" for the sum of six thousand six hundred and sixty-six and two-thirds dollars. They also agreed to keep an insurance in some safe insurance company upon the insurable property on the premises, to the amount of one-third of its value, for the benefit and security of the mortgagee. No provision was made for any insurance upon the " other property" to be conveyed to the appellant as additional security, but when the mortgage back was executed, six months later, it was therein stipulated that the mortgagors should " well and truly keep the buildings erected, and the large saw-mill to be erected, upon the premises," insured in some safely reputed fire insurance company or companies against loss by fire, and that they should assign the said policy or policies to the appellant or his assigns; and it contained the further stipulation that in default thereof it should be lawful for the appellant or his assigns to effect the said insurance, and that the premiums paid for effecting the same and the costs and charges should be a lien on the said mortgaged premises.

Evidently the deed of conveyance and the two mortgages, together with the stipulation indorsed on the second mortgage, must be construed together, as they constitute parts of the same transaction; and reference may also be made to the written agreement for the purchase and sale of the real estate embraced in the deed, as that agreement remained in force when the other instruments were drafted and until the transaction was finally closed.

Security it is stipulated shall be accepted "in proper fire insurance policy or policies on said large saw-mill in place of the within mortgage," but the amount of the insurance to be procured as the substitute for the mortgage security is not specified, and without reference to the instrument which provided for the sale and purchase of the real estate included in the deed of conveyance it would be difficult if not impossible to define that amount, but when the several instruments relating to the transaction are considered together all ambiguity at once disappears.

Viewed in the light of those suggestions the intention of the parties appears to be plain, as it is quite evident that the second mortgage constitutes the "security upon other property" for the amount which the purchasers of the real estate agreed to give to the appellant as the seller thereof in addition to the mortgage back of the premises included in the deed of conveyance.

IV. Two conditions precedent are annexed to the supposed right of the mortgagors in the second mortgage to demand that the mortgage should be cancelled and discharged, and unless it is shown that they were waived or modified by mutual consent they must both be fulfilled or the appellant must prevail: (1.) That the large saw-mill, "fifty by one hundred and fifty feet in size," was *properly* built and completed upon the foundation previously commenced, within two years from the date of the stipulation indorsed on the second mortgage; (2.) That proper fire insurance policies on said saw-mill to the amount of six thousand six hundred and sixty-six and two-thirds dollars were procured for the benefit of the appellant, in one or the

other of the two modes provided in the instrument of mortgage.

Undoubtedly the obligation to procure the policies rested on the mortgagors, but authority to procure them in case of the default of the mortgagors was vested in the appellant, and if he exercised that authority and actually procured the policies to that amount as security for their indebtedness he cannot set up the non-performance of that condition as an answer to this suit. They might procure the policies, or if they did not he might procure them, and in that event the premiums paid and the costs and charges incurred were made a lien on the mortgaged lands, and if he exercised the privilege conferred and procured the policies he is bound by his own act.

1. Compliance with the first condition is not shown, as the mill actually built is seventy-eight feet in width by one hundred feet in length, and not one hundred and fifty feet in length as described in the written stipulation, and the decree therefore must be reversed unless it satisfactorily appears that the appellant acquiesced in the change made in the plan and dimensions of the mill or accepted it after it was completed, as contended by the complainants.

Constructed as the mill was of different dimensions from the plan specified in the stipulation, it could not be erected throughout upon the foundation previously commenced, but it appears that it was erected on the same site, and that it is connected with the same water-power, and that no greater alterations were made in the foundation previously commenced than the change in the plan and dimensions of the mill required; and the proofs show to the entire satisfaction of the court that the mill as constructed cost nearly twice as much as it would if the plan indicated in the stipulation had been followed, and that it is of greater value, and that in view of the site and surrounding circumstances, it is much better adapted to the purposes to be accomplished.

Intended for three gangs of saws with other machinery incident to such a saw-mill of modern construction, it seems reasonable to suppose that the increase in the width of the

mill, as compared with the dimensions given in the stipulation, would much more than compensate for the diminution in the length of the structure, as the length is still sufficient, and the effect of the alteration is to give more space where it is most needed.

Even the answer alleges that the second mortgage was given as a performance of the agreement to furnish additional security, and the appellant admits that he agreed to accept the policies of insurance on the saw-mill in the place of the mortgage, provided the mill was built of the size specified in the stipulation and on the foundation commenced before the agreement for the sale and purchase of the real estate was executed, but he utterly denies that he acquiesced in the change made in the plan and dimensions of the mill, or that he ever accepted or agreed to accept the mill as built and completed. Three witnesses, however, testify to the contrary, and a fourth testifies that the appellant was two or three times at that place and once in the mill "during the building of the mill," and that he never made any objections to him or in his presence as to the change in the dimensions of the mill. Two of these witnesses are the mortgagors in the first mortgage, who built and completed the saw-mill; the third was a partner with them in the lumber business, and the fourth is the millwright who superintended the construction of the saw-mill and put in the machinery, and in the judgment of the court they are entitled to credit. They speak of his presence at the mill during the progress of the work and after the mill was completed, and the first three give the details of the conversation they had with him, showing to a demonstration that, if they are to be believed, the appellant not only acquiesced in the change in the plan as proposed, but that he in terms accepted the saw-mill erected on the premises as built and completed.

Opposed to the statements of those witnesses is the negative averment of the answer and the positive denial of the appellant that any such interviews ever took place, or that he ever gave utterance to any such sentiments, but it is a

sufficient response to those denials of the appellant to say that his testimony is not of a character to discredit the proofs introduced by the complainants. Attempt is also made to contradict the complainants' witnesses as to the time when they say they saw the appellant at the saw-mill or in that vicinity, but the error, if it be one, is not sufficient to discredit the witnesses, as it is quite immaterial whether the interview was at the time stated or a week or two or even a month earlier. Other considerations, such as the necessity for the removal of the shop of the deaf-mute brother, are also invoked as tending to show the improbability that the appellant should have assented to the alteration in the plan of the mill, but it is unnecessary to enter into the details, as the court is of the opinion that the allegations of the bill of complaint in that behalf are fully proved by the direct proofs.

Next objection of the appellant is that the agreement to accept the mill as built and completed, even if made as supposed, was void as within the statute of frauds of that State, because it was not in writing; but it becomes necessary before considering that question to determine whether the second condition specified in the stipulation was fulfilled so that the mortgagors in the second mortgage, or those claiming under them, have the right, if the agreement to accept the saw-mill as built and completed is operative, to demand that the second mortgage shall be cancelled and discharged.

2. Whether the mortgagors in the principal mortgage kept the insurable property included in that mortgage insured or not is not a question in this case, nor is it a question at this time whether they kept the saw-mill insured as agreed in that instrument, but the question to be decided is whether the mortgagors, within two years from the date of the stipulation, procured for the benefit of the mortgagee proper fire insurance policies thereon to the requisite amount, or whether the mortgagee within that period procured the same for his own benefit, as required or permitted in the second condition of that stipulation, when construed in connection with the provision upon the subject contained in the

principal mortgage.  Proper fire insurance policies might be procured for the purpose, as before explained, by the mortgagors or by the mortgagee, and inasmuch as the premiums paid and the costs and charges incurred were, in the latter event, to be added to and considered a part of the debt secured by mortgage, it cannot make any difference whether they were actually obtained by the one or the other of those parties.  Such being the rule to be applied, the question presented for decision is purely one of fact depending upon the proofs in the case, the results of which, as they appear to the court, will be briefly stated.

Three policies of insurance on the saw-mill were procured, in the year 1856, by the mortgagors for the benefit of the mortgagee, to wit: two thousand dollars in the Ætna Insurance Company, two thousand dollars in the Washington Union Insurance Company, and two thousand dollars in the Jackson Mutual Insurance Company; and the proofs show that the policies were delivered to the appellant, and that he accepted them without objection.  Added together, the sum is a fraction less than the required amount, but the policies were accepted without objection, and none is now made on that account.

Policies on the saw-mill were obtained, the succeeding year, by the appellant, for the same amount, to wit: fifteen hundred dollars in the Phœnix Insurance Company, three thousand dollars in the Washington Union Insurance Company, and fifteen hundred dollars in the Ætna Insurance Company; and the proofs show that the premiums which he paid for the same were added to the mortgage debt, and were ultimately adjusted by the mortgagors.

Insurance on the saw-mill for the year 1858 was also obtained by the appellant for the same amount, and the exhibits in the record show that the money he paid for the premiums was repaid to him by the mortgagors.  They also paid him at the same time fourteen thousand six hundred and seventy-three dollars and forty-three cents, which was indorsed on the bond given for the balance of the purchase-money, and which was secured by the mortgage of the same real estate.

V. All of these policies, however, were for the term of one year, and the next objection is that they cannot be regarded as fulfilling the second condition of the stipulation on that account, as they would expire before some of the instalments of the bond fell due; but the objection is not entitled to weight for several reasons: (1.) Fire policies are usually issued for one year, and there is nothing in the stipulation to justify the conclusion that the policies were to be in any other than the usual form. (2.) When the first three were obtained they were accepted by the appellant without objection. (3.) He asked and obtained leave of the mortgagors to procure the future policies, and when he came to exercise that privilege he obtained them in the same form. (4.) Because, having been intrusted, at his own request, with the business of procuring the requisite insurance, it was his own fault if the business was neglected or was not properly transacted. (5.) He cannot impute fault to the mortgagors, as they paid on the mortgage a sum nearly equal to the anticipated cost of the saw-mill, especially as they had consented to leave the business of insurance to him, and as he was expressly authorized to add the premiums to the mortgage debt, and as all sums paid for that purpose were declared to be a lien on the mortgaged lands. (6.) If he desired that the insurance should be continued, and did not wish to transact the business, he should have given notice to the mortgagors; but the probability is that he felt less interest in the subject on account of the large payment which had been made on the mortgage debt.

VI. 1. Although the fee of the mortgaged premises remains in the mortgagor, under the laws of that State, till after foreclosure and sale, still no doubt is entertained that the stipulation to accept proper fire insurance policies on the saw-mill in the place of the mortgage was an agreement providing for the surrender of an " estate or interest in lands," and, therefore, was an agreement within the statute of frauds of that State.*

---

* Revised Stat., chap. 108, § 6, p. 615; Wood *v.* Trask, 7 Wisconsin, 572; Russell *v.* Ely, 2 Black, 578.

Nothing is left for construction, as the subsequent act provides that the term "lands" shall be construed as co-extensive in meaning with lands, tenements, and hereditaments, and that the terms "estate and interest in lands" shall be construed to embrace every estate and interest, freehold and chattel, legal and equitable, present and future, vested and contingent.*

But the stipulation in this case to accept the policies of insurance on the saw-mill as security in the place of the second mortgage, and thereupon to cancel and discharge that instrument, is in writing, and having been executed as a part of the bargain of purchase and sale of the real estate, it rests upon a sufficient consideration, and is valid and binding. Argument upon that topic is unnecessary, as it is too plain for contention; but the suggestion which the appellant intends to make is that the agreement subsequently made to modify the stipulation as to the dimensions of the mill is within the statute of frauds of that State, and null and void. Views of the complainants are that an agreement, though in writing and under seal, may in all cases be varied as to time or manner of its performance, or may be waived altogether by a subsequent oral agreement; but the court is of a different opinion, if the agreement to be modified is within the statute of frauds.

2. Numerous authorities sanction the principle advanced by the complainants in cases not within the statute of frauds, and which fall within the general rules of the common law, and in such cases it is held that the parties to an agreement, though it is in writing, may, at any time before the breach of it, by a new contract not in writing, modify, waive, dissolve, or annul the former agreement, if no part of it was within the statute of frauds.†

Reported cases may also be found where that rule is pro-

---

* Revised Stat., chap. 108, § 6, p. 615; Stevens *v.* Cooper, 1 Johnson's Chancery, 425; Hunt *v.* Maynard, 6 Pickering, 489; Browne on Frauds (2d ed.), § 430.

† Goss *v.* Nugent, 5 Barnewall & Adolphus, 64; Harvey *v.* Grabham, 5 Adolphus & Ellis, 73; Emerson *v.* Slater, 22 Howard, 42; Brown on Frauds (2d ed.), § 409.

mulgated without any qualification; but the better opinion is, that a written contract falling within the statute of frauds cannot be varied by any subsequent agreement of the parties, unless such new agreement is also in writing. Express decision in the case of *Marshall* v. *Lynn*,* is that the terms of a contract for the sale of goods falling within the operation of the statute of frauds cannot be varied or altered by parol; that where a contract for the bargain and sale of goods is made, stating a time for the delivery of them, an agreement to substitute another day for that purpose must, in order to be valid, be in writing.†

Suggestion may be made that all the cases were cases at law; but the same rule prevails in equity, as appears by the highest authority.‡

Regarded, therefore, as a mere executory agreement to accept the mill when built and completed, it is clear that the statute of frauds would be a good defence to a suit for the breach of it; but it cannot be viewed in that light, as it was fully executed on the part of the mortgagors, and was in fact fully executed on the part of the appellant.

3. He is not sued for a breach of the agreement to accept the mill as built and completed; but the suit is to compel him to cancel and discharge the mortgage as agreed in the written stipulation. Called upon to plead to the bill of complaint, he sets up the defence that the dimensions of the mill vary from those specified in the stipulation, to which the complainants reply that he acquiesced in the change at the time the work was done, and that he accepted the mill as built and completed, and they prove the allegations to the

---

* 6 Meeson & Welsby, 109.

† Clarke v. Russel, 3 Dallas, 415; Emerson v. Slater, 22 Howard, 42; Goss v. Nugent, 5 Barnewall & Adolphus, 58; Harvey v. Grabham, 5 Adolphus & Ellis, 73; Stowell v. Robinson, 3 Bingham's New Cases, 928; Stead v. Dawber, 10 Adolphus & Ellis, 57; Falmouth v Thomas, 1 Crompton & Meeson, 109; Hasbrouck v. Tappen, 15 Johnson, 200; Blood v. Goodrich, 9 Wendell, 68.

‡ Emmet v. Dewhirst, 8 English Law and Equity, 83; same case, 3 McNaughten & G., 587; Stevens v. Cooper, 1 Johnson's Chancery, 429; Browne on Frauds (2d ed.), § 422.

entire satisfaction of the court. They built and completed the mill seventy-eight feet in width by one hundred feet in length, at an expense exceeding thirty thousand dollars, and the appellant not only accepted it when completed as a compliance with the stipulation, but he also accepted the policies of insurance procured on it as security in the place of the second mortgage, and he cannot now be permitted to avoid the true issue, nor to divest the transaction of its real character in order that he may set up the statute of frauds.

VII. 1. Even part performance is often admitted in equity as an answer to the statute; but it is not necessary to invoke that principle in this case, as it is clear that the appellant acquiesced in the changes made in the plan, and that the mill, as built and completed, was accepted by him as a compliance with the stipulation.*

2. Estoppel is also set up by the complainants as an answer to the defence of the statute of frauds, and, in view of the facts, the court is of the opinion that it is a complete answer to that defence. He sold the real estate for fifty-two thousand four hundred dollars, received in cash ten thousand dollars, and the purchasers gave a mortgage on the same real estate for the balance of the purchase price. They paid towards the mortgage seventeen thousand six hundred and seventy-three dollars, exclusive of five hundred and seventy-six dollars and seventy-three cents for insurance premiums and for taxes, and erected the saw-mill at the cost of thirty-two thousand dollars, and the record shows that the appellant foreclosed the mortgage, and, with two other persons, became the purchaser of the entire property and improvements, subject to the mortgage, for the sum of nineteen thousand six hundred dollars, and has a decree for the deficiency of two thousand eight hundred and sixty-four dollars and eleven cents, for which he proposes to foreclose the second mortgage now under consideration.

3. Beyond doubt the mortgagors in the first mortgage, one of whom was the principal mortgagor in the second mort-

---

* 1 Story Eq. Jur. (9th ed.), §§ 759, 761; Browne on Frauds (2d ed.), § 463.

gage, built and completed the saw-mill in the full belief, induced by the conduct and declarations of the appellant, that it would be accepted as a compliance with the stipulation indorsed on the second mortgage. Taken as a whole, the proofs satisfy the court that his conduct and declarations led them to believe that he was content with the change made, and that he would readily acquiesce in their doings when the mill was completed, and, if so, he cannot be heard to allege or prove the contrary to the prejudice of their rights.*

Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim.

DECREE AFFIRMED.

---

* Pickard *v.* Sears, 6 Adolphus & Ellis, 474; Freeman *v.* Cooke, 2 Exchequer, 654; Foster *v.* Dawber, 6 Id. 854; Edwards *v.* Chapman, 1 Meeson & Welsby, 231; Morris Canal Company *v.* Lewis, 1 Beasley, 323; Cary *v.* Wheeler, 14 Wisconsin, 285.