Mr. Justice Morris
delivered the opinion of the Court:
Notwithstanding the voluminous character of the record in this, case, extending, as it does, over twelve hundred printed pages, the salient facts are neither complicated nor numerous, and the questions of law involved are contained within a comparatively narrow compass. It is perfectly apparent, and it is shown by the record beyond the possibility of any reasonable doubt, that the professional services which resulted in the realization of the fund in controversy to the owners of the claim, were all performed by MacKie and Woodruff, and only an infinitesimally small portion of them by Mr. Russell. Without seeking at all to depreciate the energy and alertness of Mr. Russell, we fail to find anything whatever in the record that was contributed by him to the recovery, further than the almost formal matter of the presentation of the bonds before the joint commission. The great burden of the work, consisting of the original preparation of the case for the Caracas Commission, and the difficult and long-continued efforts before Congress and with the Department of State and the President of the United States to procure the re-opening of the work of that commission, and the allowance of the claim, was borne by Messrs. MacKie and Woodruff, and no part of it by Mr. Russell. Even the greater part of the services before the last commission was rendered, not by Mr. Russell, but by Mr. J. Hub-ley Ashton, as counsel for the United States. Whatever services were rendered by Mr. Russell were rendered before that commission; and yet it is perfectly plain that the work before the commission was little more than the mere formal conclusion of the work that had already been accomplished solely and exclusively by Messrs. MacKie1 and Woodruff, without aid or assistance of any kind from Mr. Russell, or from any other person or persons claiming to act in the interest of the Howland claim. This is so clear to us from *476 the record that we would regard any analysis of the testimony to demonstrate it as a useless waste of time and space that would subserve no good purpose. Indeed, we understand that this is scarcely controverted — certainly not seriously controverted by the complainants. The main contention of the argument on behalf of these latter is, that the services, whatever they were, were not rendered under any contractual relations existing between the parties, that could form the basis of a legal liability on the part of the complainants.
Undoubtedly, no man can force upon another a legal liability for services not performed at the request, express or implied, of that other person, or that have not been accepted and ratified by him. Where there is no contract, there is no legal liability for services rendered, no matter how valuable those services may have been. This is a very plain and elementary proposition of law, and is nothing more than the dictate of right reason. Whether there was a valid subsisting contract in this case between the parties, is the question that lies at the root of the whole controversy.
That there was a contract entered into on the ist of October, 1868, between William H. Aspinwall, as sole surviving executor of the will of G. G. Howland, and the personal representatives of the estate of S. S. Howland, on the one side, and James S. MacKie, on the other, for the prosecution of this claim against the republic of Venezuela, is, of course, conceded by all parties. But it is claimed on behalf of the Howlands that this contract and the contemporaneous power of attorney given to MacKie to prosecute the claim were terminated by the failure of the Caracas Commission to adjudicate the claim; and that, in any event, they were ultimately revoked by the Howlands, who had a right to make the revocation. On the other hand, it is claimed by MacKie and Woodruff that the contract and power of attorney executed in 1868, did not expire, and were not intended to expire, with the failure of the Caracas Commission; and that, when the Howlands afterwards, in 1882 and 1889, at *477 tempted to revoke them, they could not legally do so in such manner as to deprive MacKie of his stipulated compensation.
The contract and power of attorney are not in terms confined to the prosecution of the claim before the Caracas Commission. The power of attorney from Aspinwall to Wolcott authorizes the latter to represent Aspinwall in the matter of the claim “ before any court, tribunal or commission whatever.” The substitution of MacKie by Wolcott is as broad as the power vested in the latter; and the specific provision of MacKie’s contract is that he will present the claim “to the proper tribunal having cognizance of the same” under the convention between the two governments (of Venezuela and the United States) of April 25, 1866. Undoubtedly it was assumed at the time that the Caracas Commission was “the proper commission” for the purpose; and the anticipation was that the claim would be allowed and an award made by that commission. But when that commission adjourned, practically without any action whatever on the claim, refusing in fact to take cognizance of it, it would be an extremely narrow and illiberal construction of the understanding between the parties, that it should be taken not to extend to any other commission that might be created in pursuance of that treaty or of any treaty supplemental thereto.
That this was not the understanding of the parties themselves at the time, or at any time prior to the year 1875, is plain from the fact that MacKie, with the consent and at the request and instigation of William H. Aspinwall, continuously during the period from 1868 to 1875, inclusive, expended his time and labor and money in attempts before the Congress of the United States and the Department of State, to reverse the action of the Caracas Commission and to procure the appointment of a new commission to consider the claim; and from the fact also that during all that time he retained the possession and control of the bonds. Assuredly these circumstances are wholly inconsistent with the theory *478 that his employment was terminated with the failure of the Caracas Commission. Nor does the return of the bonds, which is satisfactorily explained by MacKie as being a return with the understanding that they should be forthcoming when needed, imply that the agency of MacKie was abandoned and came to an end in December, 1875. No such significance was attached to the act at any time by any of the parties.
But so far as the estate of G. G. Howland is concerned, the decisive fact in this connection is, that, when in the year 1882, the efforts of MacKie and Woodruff were about to culminate in substantial results, Meredith Howland, the administrator with the will annexed of G. G. Howland, and so the official successor of Wm. H. Aspinwall, distinctly and positively recognized the existence of the contract between MacKie and the estate of G. G. Howland, and induced Mac-Kie to proceed to act thereunder. For it would be idle to 'suppose that MacKie’s inquiry of Meredith Howland under date of February 1, 1882, whether the latter did not regard the contract of 1868 as yet in full force and binding, as being merely a request for a legal opinion.. The suggestion is not worthy of serious consideration. The circumstances demonstrate conclusively that, with the view to the removal of all doubt as to the continued subsistence of the contract and in contemplation of the employment by him of Wood-ruff as his associate in the case, MacKie had an interview with Mr. Meredith Howland, on or before the first day of February, 1882, to have some assurance from the latter that he (Howland) regarded the contract as being yet in force, so that MacKie might safely proceed with the further prosecution of the claim, and with the employment of Woodruff. When Mr. Meredith Howland gave the assurance first verbally, and then in writing, that he considered the contract “ in full force and binding,” every reasonable man will recognize the fact that something more was intended than the mere venture of a legal opinion by a gentleman who does not seem to have been a lawyer. It was a distinct, recogni *479 tion of the contract as a valid subsisting contract, and practically a renewal of it, with the assurance to MacKie that he might safely proceed under it, that he might expend his time and his money and his efforts under it, and that he might associate with himself such associates as he might deem expedient and incur liability to them. As amounting to less than this we cannot regard the correspondence between Mr. Meredith Howland and Mr. MacKie on February 1st and 2d, 1882.
So far, therefore, as regards the estate of G. G. Howland, the contract of 1868 was continued in force, and never ceased to be operative, before its formal revocation by Mr. Meredith Howland on October 29, 1889; and as to the effect of that revocation we will have occasion to refer hereafter.
We must, however, come to a somewhat different conclusion with reference to the relations of MacKie to the estate of S. S. Howland. While Mr. William H. Aspinwall exercised some control over that estate as well as over that of G. G. Howland, it is quite clear that even from the beginning his control, was more limited. From the very beginning the parties beneficially interested in that estate assumed to act for themselves, and dealt directly with MacKie in the creation of the agency of the latter. They joined with William H. Aspinwall in the execution of the contract and power of attorney; and while, prior to 1882, they seem to have acquiesced in what was done on their behalf by Mr. Aspinwall and Mr. MacKie, and at all events took no independent action themselves, when, in 1882, there was question of determining specifically their relations to MacKie, they declined to give the assurance which Mr. Meredith Howland did for the estate of G. G. Howland, and commissioned their relative Charles H. Russell, Jr., as their attorney to act for them. It is unnecessary to determine whether they were justified in law in thus declaring their relations with Mr. MacKie at an end, and withdrawing his powers. For we find the fact to be that MacKie acquiesced in their action, agreed to co-operate with Russell, and did not, there *480 after, as to them, assert any right to maintain his own authority under the contract into which they had entered with himself. We must regard his action as a waiver of his rights and an estoppel against his reassertion of them. Swain v. Seamens, 9 Wall., 254; Shutte v. Thompson, 15 Wall., 151; Bank v. Roop, 48 N. Y., 292.
It is very true that Russell proceeded to make his contract with the representatives of the S. S. Howland interest before he or they had any conference with MacKie in regard to the continued validity of his contract, or his further proceeding under it; and that the contract of Russell was not superin-duced by any waiver of right on the part of MacKie. But whether Russell’s action at the time was justified or not, it was incumbent upon MacKie then to insist upon his own rights, if he still regarded his own contract as being in force, and he desired to proceed with it. His acquiescence in Russell’s adverse claim and his promise and agreement of co-operation with him, were plainly such a waiver of right that it would not now be equitable to permit him to reassert his claim. Whether, under the circumstances, he is not entitled' to a quantum meruit for the services previously thereto rendered by him, may be a question; but with such question we have nothing to do in these proceedings.
When in 1889 the services of MacKie and Woodruff had been crowned with success, and a new commission had actually been organized in Washington under the treaty reviving the business of the Caracas Commission, and when little more remained to be done than to bring the Howland claim formally before that commission, Mr. Meredith Howland, as administrator de bonis non of the estate of G. G. How-land, was induced to revoke the power of attorney given to MacKie in 1868, and ratified by himself in 1882, and to execute a new power of attorney to Charles H. Russell, Jr., as well as to enter into a contract with the latter to pay him one-half of the proceeds of recovery instead of the one-third which had been agreed upon as MacKie’s compensation. If Mr. Meredith Howland could revoke the power of *481 attorney given to MacKie he certainly could not thus abrogate the contract, or escape the liability that had been incurred under the contract, when the stipulated services had all been substantially rendered, and the attorney was ready, willing, and able to complete the small residue of the contract that remained to be performed. This is so plain a proposition that it is unnecessary to waste words upon its discussion. What Mr. Howland’s reasons and motives were we are left to conjecture. None were assigned at the time, and we are justified in assuming that none of a satisfactory character could have been assigned. His action, so far as it sought to affect the right of MacKie and Woodruff to their stipulated compensation, we must regard as a nullity.
It is objected, however, that the contract of January 1, 1868, was invalid; that it was a contract beyond the power of an executor or administrator to make; and that it was an improper disposition of the assets of the Howland estate, and that both William H. Aspinwall in executing in 1868 and Meredith Howland in ratifying it in 1882 exceeded their authority. This position is wholly untenable. The action of William H. Aspinwall was not an unlawful, unusual, or improper disposition ot any assets of the estate in his hands, but an honest attempt to collect assets and to reduce them into possession. And the law is too well settled to be a legitimate subject for discussion, that an executor, charged with the duty of the collection of the assets of his estate, may enter into all reasonable and proper contracts to effect such collection — into any contracts, in fact, for that purpose that any ordinarily prudent man might make to collect similar claims for himself. And it is for himself and not for the court of probate to make the contracts. In view of its supervisory power over their accounts a court of probate, of course, has a check upon the contracts of executors and administrators, and yet it has neither power to make contracts for them, nor to direct or authorize them to malee any. While their authority comes from the court, their powers are derived from the will or from the statute. In this re *482 gard they stand differently from receivers appointed by a court of equity.
That the executor in this instance had the right and power to contract with competent persons to aid him in the collection of the assets which he desired to collect for his estate we regard as beyond question. And that the contract which he did make was a reasonable and proper one, as we understand it, is beyond cavil. For it is no more than an agreement to pay MacKie one-third of the amount which he might recover, as compensation for his services in effecting the recovery. When we contrast it with the contract with Russell it is certainly more advantageous than that to the Howland estate.
After all we cannot ignore the fact that this controversy, although in form a controversy between the Howlands, on the one side, and MacKie and Woodruff, claiming compensation as their attorneys, on the other, is, in fact, a contest between rival attorneys as to which shall receive the amount allowed for compensation. The Howlands have no real interest in these suits. No part of the money in court is to go' to them under any circumstances. It is a question only whether it shall be paid to MacKie and Woodruff under a contract, which, so far as the record discloses, has been honestly, faithfully, and efficiently performed, or.to Russell, under an agreement under which, however willing he may have been, nothing has been done, or only comparatively little.
From what we have said it results, in our opinion, that Messrs. MacKie and Woodruff are entitled in equal moieties to one-third of the one-half of the fund paid on behalf of the G. G. Howland estate, and that they are not entitled to any compensation in this suit from the portion óf the fund belonging to the estate of S. S. Howland.
We are compelled, therefore, to regard the decree of the court below as erroneous, and we mtist reverse thai decree, with costs, and remand the causes to the Supreme Court of the District of Columbia, with directions to enter a decree in accoi'dance with this opinion. And it is so ordered.