## EDWARD G. BUDD MFG. CO. v. ÆTNA CASUALTY & SURETY CO.

(District Court, E. D. Pennsylvania. May 28, 1921.)

### No. 7616.

**Principal and surety ⚫100(4)—Owner held not entitled to recover from surety on builder's contract by reason of changes in construction.**

Owner was not entitled to recover from insolvent contractor's surety excess over contract price of installation of electric wires, fixtures, etc., under a contract permitting modifications and changes to admit a better adaptation of the system to the work to be performed, or to avoid an

⚫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

obstruction where required, or to prevent an interference with other equipments, but providing that no claim for extra work should be allowed unless ordered in writing, and the costs agreed upon and stated in the order, where owner, after the failure of the contractor, entered into a contract with surety, in which it agreed to perform all things, and surety agreed to pay moneys expended in excess of a certain amount, in consideration of which the surety was relieved of its obligations under the bond; owner having, without notice to the surety, changed overhead construction of conduits, wires, etc., to an underground system.

At law. Action by the Edward G. Budd Manufacturing Company against the Ætna Casualty & Surety Company. There was a directed verdict for defendant, and plaintiff moves for a new trial. Motion denied.

James S. Williams and Morton Z. Paul, both of Philadelphia, Pa., for plaintiff.

I. Smith Raspin, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff made a contract with Joseph S. Miller for the labor and material required for furnishing a complete electric installation for lighting, power, and fixtures in three new buildings it was then erecting. The contract price was $14,487.

The defendant became surety in the sum of $7,243.50 for Miller's faithful performance of the contract. Before Miller commenced performance, he became bankrupt and was unable to proceed with the contract. Thereupon the surety company, being liable for his performance to the amount of its obligation, entered into a contract with the plaintiff, in which it was agreed that the latter should do and perform all things which should have been done and performed by Miller under his contract with the plaintiff, and the defendant agreed to pay the plaintiff all moneys expended by it in excess of $15,630 in performing or obtaining the performance of what should have been done by Miller. In consideration thereof the defendant was relieved of its obligations under the bond.

The specifications and drawings provided for an overhead construction of the conduits, wires, etc. The plaintiff, without notice to the defendant in any manner, changed the construction from overhead, as provided in the specifications and drawings, to underground, construction. The plaintiff then claimed of the defendant the sum of $5,988.68, with interest, the alleged excess of the cost of construction over $15,630, which the defendant declined to pay. Thereupon suit was brought.

After the testimony was closed, the court affirmed a request of the defendant for binding instructions in its favor, and a verdict for the defendant was rendered. The specifications of the contract between the plaintiff and Miller contain the following provisions:

"*Drawings.*—Drawings will show the general arrangement of the system, but shall not be considered absolute, being subject to such modifications and changes as will admit of better adaptation of the system to the work to be performed, to meet the requirements of the specifications, or to avoid any ob-

structions where required, and to prevent interference with other equipment. Changes shall not, however, be made without the consent of the engineers."

"*Changes.*—Owners shall have the right during the progress of construction to make any changes, additions, or omissions that they may desire, which shall be executed by the contractor without impairing the contract, the value of the changes to be agreed upon in writing and added to or deducted from the contract price. No claim for extra work shall be allowed unless the same is ordered in writing and the cost agreed upon and stated in the order."

While the specifications permit modifications and changes to admit a better adaptation of the system to the work to be performed, or to avoid an obstruction where required, or to prevent an interference with other equipments, yet, if they involved any changes in construction, it was a condition precedent to either party being entitled to add the value to or deduct it from the contract price that the value of the changes be agreed upon in writing.

It was testified, at the trial, that the change from overhead to underground construction was made with the oral consent of Mr. Ballinger, the engineer whose firm was in supervision of the work. This consent was given to the plaintiff, but the defendant was neither notified nor consulted, and did not know of the change until called upon for payment.

The attitude of the plaintiff seems to be that it occupied the dual position of owner and contractor, and that, inasmuch as witnesses testified that the cost of underground construction was less than the overhead construction provided for in the plans and specifications would have cost, the defendant has no right to complain. While the construction which was being done was done for the benefit of the plaintiff, upon entering into the agreement with the defendant, it put itself in the position of contractor, and the defendant, being no longer in the position of surety, was in the position of owner to the extent that it was obliged to pay the owner's bills.

The stipulations of the specifications cited above are both equitable and reasonable, and are intended to protect the owner against doubtful claims, and to protect the contractor from doubtful deductions. If the plaintiff knew, at the time the changes in construction were being made, that it would cost less than under the original plans and specifications, the defendant was entitled also to know those facts, and to have an opportunity at the time the change was decided upon, and both before and during its construction, to make its calculations of the cost based upon the changes to be made. What the plaintiff did was to attempt to change the contract in a substantial manner without the defendant's consent.

The language of the Supreme Court in Swain v. Seamens, 76 U. S. (9 Wall.) 254, at page 263 (19 L. Ed. 554), is in point:

"Substantial performance, it is true, is all that is required to satisfy any such agreement, and it may also be conceded that in the adjudication of controversies growing out of building contracts slight differences in the dimensions between the building constructed and the terms of the contract may, under many circumstances, be overcome by a reasonable application of that rule; but the differences in the case before the court are far too great to fall within that principle, as the effect would be to make a new contract and substitute it in the place of the stipulation executed by the parties."

The plaintiff, having failed to obtain an agreement in writing for the changes under its contract with Miller, which was a condition precedent to its right of recovery, the directed verdict was proper, and the motion for new trial is denied.