CHARLOTTE UNION BUS STATION, INC., PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31330.    Promulgated November 26, 1952.

*Shearon Harris, Esq.,* and *Leslie A. Heath, C. P. A.,* for the
petitioner.

*Paul E. Waring, Esq.,* for the respondent.

340

346

OPINION.

LeMire, *Judge:* The primary question presented is whether the income of petitioner is to be computed under the provisions of the agreement and lease dated November 26, 1940, as modified by an amendatory agreement executed June 14, 1945, as the respondent determined, or on the basis of actual billings, as reported by petitioner.

The contention of petitioner appears to be that the agreement of November 26, 1940, was one which the parties could alter, amend or abrogate by parol at any time, and that the parties by parol agree-

ments and conduct contrary to its provisions, in effect, abandoned the agreement and substituted therefor a new agreement of monthly billings.

The petitioner is a North Carolina corporation organized for the purpose of erecting and operating a bus terminal with appropriate facilities. All of its capital stock issued at the time of its incorporation was owned by three operating bus companies. Petitioner is a separate taxable entity. Where business is conducted through separate corporate entities separateness will be recognized in matters relating to taxation regardless of the disadvantages entailed. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415.

On November 26, 1940, petitioner and the three operating bus companies entered into a written agreement under which petitioner agreed to erect a terminal with the necessary facilities, and the operating bus companies agreed to use such facilities for a period of 15 years and to pay, as rent, an amount to be determined under a prescribed formula. Such agreement refers to the respective parties as "lessor" and "lessees." The payments to be made thereunder are denominated "rent." In many of its provisions the agreement is referred to as a "lease." Whether the agreement in question is in fact a lease is not, for present purposes, necessary for us to determine, since, in our opinion, the agreement touches an interest in realty or concerns realty and is one required to be in writing. General Statutes of North Carolina, 1943, sec. 22–2. *Sammax Inv. Co.* v. *Zindel*, 198 N. C. 109, 150 S. E. 704; *Combs* v. *Brickhouse*, 201 N. C. 366, 160 S. E. 355. According to the weight of authority, a written contract within the statute of frauds cannot be varied by any subsequent agreement of the parties, unless such new agreement is also in writing. *Emerson* v. *Slater*, 22 How. 28, 40; *Swain* v. *Seamens*, 76 U. S. 254, 272; *Stowell* v. *Robinson*, 3 Bing. N. C. 927.

If the agreement is one which the statute requires to be in writing any material modifications or alterations resting in parol would be ineffective to the extent they were unexecuted.

This record establishes that the first written amendatory agreement was executed on June 14, 1945. The parties have attempted to make it retroactive to July 31, 1944. If the original agreement is one required to be in writing, to permit the amendatory agreement to be made retroactive, we think, would in effect annul the statute.

Assuming that we are in error in concluding that the original agreement was one required to be in writing and that it could be altered or modified at the will of the parties, this record does not establish with sufficient clearness what the parol modifications were or a definite time when they were entered into. The respondent has given recognition

to the written amendatory agreement as of the date of its actual execution on June 14, 1945.

We think the agreement of November 26, 1940, as amended by the amendatory agreement of June 14, 1945, fixed the rights, privileges, and obligations of the respective parties thereto and that the respondent properly computed the income of petitioner under its terms and provisions.

The second issue involves the question whether, under the agreement of November 26, 1940, the income and excess profits taxes asserted against petitioner were to be reimbursed to it by the three operating bus companies, and constituted rental income of petitioner.

It is contended by petitioner that the agreement of November 26, 1940, makes no specific mention of income and excess profits taxes and that it was the intention of the operating bus companies that petitioner should be operated on a nonprofit basis and was to earn no income that would subject it to income and excess profits taxes. The respondent contends that under section 9 of the agreement the operating bus companies were to pay to petitioner as rent all net expenses determined, as provided therein. Section 9 of the agreement is set forth in full in our findings of fact and need not be repeated here.

The term "expenses" is a word of broad meaning. It has no fixed definition. It is comprehensive enough to include a wide range of disbursements. *Pittsfield & N. A. R. Corp.* v. *Boston & A. R. Co.*, 260 Mass. 387, 157 N E. 611. We think the use of the term "expenses" renders the agreement ambiguous. Where ambiguity exists the construction given by the parties will be given great, if not controlling, influence. *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 118. As said in the case of *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273, there is no surer way to find out what the parties meant than to see what they have done.

Income taxes paid by petitioner for the calendar year 1942 and for the fiscal year ended July 31, 1943, were included and billed to the operating bus companies in computing rentals due for the fiscal years ended July 31, 1943, and 1944, respectively. In view of the interpretation given to the provisions of the agreement of November 26, 1940, by the conduct of the parties, we think the agreement is to be construed as requiring the operating bus companies to pay to petitioner, as a part of their rent, the income and excess profits taxes asserted against petitioner.

The record shows that petitioner first realized in March 1945 that it would have to include as taxable income to it for the current fiscal year all additional taxes accrued for the prior fiscal year. Such knowledge gave rise to the desire of the parties to amend the agreement so as to specifically provide that income and excess profits taxes

were not to be included as an expense. The written amendatory agreement executed June 14, 1945, so provided. The petitioner contends that the parties had orally agreed to a modification of the original agreement with respect to the payment of such taxes and that the written agreement was predated to the time when such oral agreement was entered into. As heretofore stated, we think the amendatory agreement could not be made retroactive. If any retroactive effect is to be given to it, such retroactive effect should not be carried back to a time preceding the making of the alleged parol agreement with respect to the payment of income and excess profits taxes, which is shown by the evidence to have occurred about March 1945.

The additional Federal income taxes of $45,150.16 and North Carolina income tax of $3,309.29, asserted against petitioner for the fiscal year ended July 31, 1944, accrued on October 15, 1944, as a debt payable by petitioner. Under the agreement of November 26, 1940, petitioner was entitled to reimbursement of such amounts as rent. As of the beginning of the fiscal year July 31, 1945, the petitioner had the right to receive as rental income for that year the income taxes payable on income earned in the preceding year. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine Railroad*, 279 U. S. 732; *Hamilton* v. *Kentucky & Indiana Terminal R. Co.*, 289 F. 20; *Houston Belt & Terminal Ry. Co.* v. *United States*, 250 F. 1.

The respondent has recognized the amendatory agreement as of June 14, 1945, and has not included in petitioner's taxable income for the fiscal years ended July 31, 1946, and 1947, the additional income taxes asserted for the respective taxable years ended July 31, 1945, and 1946.

The amendatory agreement of June 14, 1945, contains a provision to the effect that the operating bus companies would "loan" the petitioner the money to pay taxes then due and to make similar loans for succeeding years, all of which loans were to be made by the operating bus companies in the amount representing that portion of such taxes which such companies would have been required to pay if such sums had been included in the respective taxable periods as items of expenses under section 9 (e) (1), as it existed prior to the amendment contained in the amendatory agreement.

The respondent contends that the attempt to treat as "loans" the payments to cover income taxes for prior years which accrued during the taxable year was in violation of the agreement of November 26, 1940, and a tax avoidance scheme which should not be recognized for tax purposes.

We find it unnecessary to characterize the motives which prompted the parties to make such agreement. Unless retroactive effect is to be

given to the amendatory agreement, which we have declined to do, income taxes of petitioner which accrued and were payable to it by the operating bus companies as rent under the agreement prior to its amendment constitute income taxable to petitioner notwithstanding the parties have treated the payments as loans. To hold otherwise, in our opinion, would permit petitioner to distort its income.

The final issue involves the question of depreciation as representing taxable income of petitioner. The total depreciation sustained by petitioner on its buildings and equipment in the fiscal years ended July 31, 1945, 1946, and 1947, in the respective amounts of $5,017.48, $4,752.38, and $4,868.44, has been included by the respondent in petitioner's income for such respective years. All the aforesaid amounts, except the sum of $116.08 for the fiscal year ended July 31, 1947, were billed to and paid by the operating bus companies to petitioner on a prorated basis as rent. Depreciation is specifically mentioned in section 9 (e) (1) of the agreement of November 26, 1940, as one of the items to be included in the statement of total expenses of the terminal company, petitioner herein.

Petitioner contends that the inclusion of the term "depreciation" in the agreement was the result of a mutual mistake. This record, however, does not show, nor does petitioner contend, that the agreement was amended in such respect either orally or in writing prior to or during the taxable years involved. Nor have the parties ever instituted any proceeding to have the agreement reformed to express their real intention. In the absence of any such affirmative action, we think, the agreement is to be given effect as written. We hold, therefore, that depreciation sustained by petitioner which was billed to and paid by the operating bus companies as rent constituted income taxable to petitioner in each such fiscal year.

Therefore, we hold that the income of petitioner in the respective taxable years involved is to be computed in accordance with the terms of the agreement of November 26, 1940, until the execution of the amendatory agreement on June 14, 1945, and thereafter in accordance with the terms of such agreement as modified, and not on the basis of actual billings as reported by petitioner.

*Decision will be entered under Rule 50.*