SCHAFER v. HELVERING, Com'r of Internal Revenue (three cases).

Nos. 6549–6551.

United States Court of Appeals for the District of Columbia.

Argued Feb. 6, 1936.

Decided March 2, 1936.

Edgar J. Goodrich, of Washington, D. C., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Carlton Fox, Robert H. Jackson, and Hugh Brewster, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

This is a petition to review an order of the Board of Tax Appeals finding deficiencies for the calendar year 1929. The question is whether petitioners are entitled to have their income for the taxable year computed by reference to inventories of securities taken at market value at the beginning and end of the year.

Petitioners were general partners in the partnership of Schafer Bros., New York City. The partnership was engaged in the general stock brokerage business. One of the partners owned a Stock Exchange seat and was the floor member. The other two were the office members. All three were actively engaged in the business. "The partnership was a dealer and merchant in securities on commission and on margin. Such business activity comprised the execution of orders for purchase or sale of securities by its customers either on the Exchange, the Curb, or wherever the particular securities were listed." It participated in syndicate and underwriting operations. "Also, as a part of its business activities, but with no relation to its customers' accounts nor to the execution of orders for its customers, the partnership has always, to some extent, bought and sold securities for its own account. * * * Such trading was conducted through orders executed by Leonard Schafer [the floor member] or other brokers and had no relation to or connection with the accounts of the partnership's customers, but were purchased in expectation of a rise in the market price and for the purpose of resale, to any buyer, at a profit for the partnership's own account. Such securities were not purchased for investment." Sales of the securities purchased were made through orders given Leonard Schafer or other brokers and the identity of the buyer was not known. The record of purchases and sales was kept in a separate account book. Prior to 1925 the partnership carried its own securities at cost, but beginning with that year and including 1929 it inventoried, at fair market value, such securities at the beginning and end of the year. "The change was made as a matter of business policy, but with knowledge of the effect of the taxing statutes. The New York Stock Exchange, since about 1923, has required its members to inventory securities for the

**318**

purpose of certain Exchange questionnaires."

The Commissioner determined that the partnership was not a dealer with respect to such securities and disallowed the use of inventories, and increased the partnership income by the amount of $511,667.00. The Board sustained the Commissioner, on the ground that in the purchase and sale of stocks for its own account the firm was a speculator and not a dealer within the provisions of the statute and regulations.

Petitioners rely upon Commissioner v. Stevens (C.C.A.Second Circuit) 78 F.(2d) 713, and Commissioner v. Charavay (C.C.A.Third Circuit) 79 F.(2d) 406, and insist that the facts in those cases and in this are indistinguishable; and in our opinion this is correct. If we follow them, we should be content to accept their conclusions as our own; but after careful thought, and with great deference, we are constrained to adopt a different view.

The applicable statute is section 22 of the Revenue Act of 1928. Subsection (c), 26 U.S.C.A. § 22 and note, provides: "Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

The section is general and casts upon the Commissioner the duty of adapting it to the conditions it was intended to cover, and gives to his regulation the force of law. The decision, therefore, necessarily turns upon the interpretation of the Commissioner's regulation. It is as follows:

"Art. 105. *Inventories by dealers in securities.*—A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—

"(a) At cost;

"(b) At cost or market, whichever is lower; or

"(c) At market value,

may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule."

Slightly paraphrased, the regulation is that a dealer in securities, with an established place of business, regularly engaged as a merchant in the purchase of securities, not for investment, but for resale to customers with a view to gain and profit, is entitled to have his income computed on inventories.

It should, however, be borne in mind in considering the regulation that section 22 (c) is not applicable alone to dealers in stocks and bonds. It covers all classes of business. In the case of the ordinary storekeeper the regulation would necessarily differ somewhat from that in the case of a dealer in securities, but only in details. As promulgated by the Commissioner, the underlying principle in each is the same. There has to be a license or right to conduct the business, a holding out to the public, an offering of wares or securities for sale, and customers to sell to. In the case we are considering petitioners' firm was licensed to do a stock brokerage business, which we assume would include buying and selling on commission and dealing generally in what are popularly known as marketable securities. Petitioners have an established place of business and held themselves out to their customers as authorized and qualified to buy or sell for them; as broker,

shares of stocks and bonds; but there is not a word of evidence that they likewise hold themselves out as having on hand securities for sale on their own account, or that they personally or through salesmen carry on the business of selling their own securities to their own customers. There is no evidence that they offer for sale to the public securities in the sense that a merchant offers for sale his stock in trade, and the fair conclusion from their own evidence is that they never thought of themselves as merchants or as engaged in merchandising as that term is commonly understood.

What they did was to use their funds and their expert knowledge of market conditions in the purchase on the exchanges of stocks and bonds from brokers, in anticipation of a rise in price, and the subsequent sale of the same stocks and bonds, under the same conditions, through the same or other brokers. The motive was neither more nor less than that which induces every such transaction by the public generally—transactions which occur daily on the exchanges and which are universally known and designated as speculations.—There is a distinction between this plan and the plan more or less common a few years ago with certain large banking institutions and their subsidiaries of setting up so-called investment departments to underwrite and purchase bonds and stocks, and to peddle them out to customers through solicitation or contacts. In such cases the analogy to ordinary merchandising is nearly or quite complete. The element of resale *to customers*—i. e., people who regularly or repeatedly deal with them—necessitates both possession of the thing to be sold and customers to sell it to. In the present case the last element is wholly lacking. Petitioners never had in mind disposing of their securities to their partnership's customers. If, for instance, one of the latter had ordered the purchase for his account of 1,000 shares of Steel stock, it is unthinkable that petitioners would in such case have made delivery to him of 1,000 shares of that stock belonging to themselves. And this is obvious, because that was not their manner of doing business. The fair inference from their testimony is that their transactions in the stocks and bonds in question, both as to purchase and sale, were and were intended to be consummated only through the instrumentality of brokers on some of the exchanges. In

this, they neither had a customer nor knew one, and hence were not—*"one who as a merchant buys securities and sells them to customers."* Their stock brokerage business was their profession. The buying and selling for their own account was a side line which is none the less speculation because done by one engaged in the security business. In this view we cannot follow the conclusion reached in the Stevens Case nor concede, as is stated there, that when petitioners' firm purchased shares of stock, these were "its wares" or stock in trade, nor when it sold them through its own broker to another broker, the latter broker was the sort of customer contemplated by the regulation.

No more can we accept the statement in the Charavay Case that the controlling factor "is not the method by which the partnership obtained customers or made sales," but "it is the fact that the partnership purchased securities and held them not for investment or speculation, but for resale at a profit to anyone who desired to buy." We think, on the contrary, that the element of speculation alone inheres in a transaction of the nature we are concerned with, and that it is inaccurate to call it anything else.

But counsel for petitioners point to the language of the concluding paragraph of the regulation as sustaining their view. It reads: "Taxpayers who buy and sell or hold securities for investment or speculation *and* not in the course of an established business, * * * are not dealers in securities within the meaning of this rule." The use of the word "and" which we have italicized is unfortunate and gives ground to argue that neither investors nor speculators are forbidden the use of inventories if the transactions are made in the course of an established business. But as to this we agree with the view expressed by Judge Learned Hand in Seeley v. Helvering, Commissioner (C.C.A.) 77 F.(2d) 323, in reply to the same argument—that though the use of the word "and" rather than "or" may throw a faint shadow across the earlier words, it cannot obscure them.

█ Counsel also tell us that petitioners are entitled to inventory their securities for the year in question in reliance upon the practice of the Bureau of Internal Revenue in prior years and the expressed views of the Bureau on the subject. It

is said that regularly for four years preceding 1929 the partnership inventoried its securities with the knowledge and approval of the Bureau. It is also said, and doubtless is true, that during some of those years—perhaps all of them—the method of computing income now insisted on by the Commissioner, if then applied, would have resulted in a smaller tax; but granting this, and granting also that the Bureau's willingness to leave undisturbed the practice until 1929 was induced by the larger tax accruing to the government, such action or lack of action cannot estop the government now from insisting upon compliance with its laws. Wrongs between man and man, which shock the conscience and justify the intervention of a court of equity, cannot affect or prejudice the sovereign in the right to demand the full measure of the statute. Whoever deals with the government does so with notice that no agent can, by neglect or acquiescence, commit it to an erroneous interpretation of the law. Helvering v. New York Trust Co., 292 U.S. 455-466, 54 S.Ct. 806, 78 L.Ed. 1361; Seeley v. Helvering, Commissioner (C.C.A.) 77 F.(2d) 323.

True enough, petitioners might have altogether avoided the tax now assessed by selling their stocks and immediately rebuying them, and it is likely they would have done so but for their reliance upon the repeated approval of the other method by the Bureau; but even that cannot help them if the old interpretation of the regulation by the Bureau was wrong—and it is convincingly clear to us it was.

Order affirmed.