## BALKAN NAT. INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 24.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1939.

CHASE, Circuit Judge, dissenting.

For the opinion below see 36 B.T.A. 1183.

Allen H. Gardner, of Washington, D. C. (Morris, Kixmiller & Baar, of Washington, D. C., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and J. Louis Monarch and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The question presented is whether the statute of limitations on assessment and collection of income and profits taxes for the year 1918, during which the petitioner was operating in the United States under a license issued pursuant to the Trading with the Enemy Act, 50 U.S.C.A. Appendix, § 1 et seq., had expired prior to the mailing of a deficiency notice to the petitioner in 1934. The Board of Tax Appeals sustained the deficiency assessment.

The petitioner is a Bulgarian corporation which formerly had a United States

branch engaged in the fire reinsurance business. Throughout the year 1918 liquidation of the petitioner's business was carried on under a license issued to the petitioner and its United States manager, Wm. C. Scheide & Co., by the Secretary of the Treasury pursuant to the Trading with the Enemy Act and proclamations and executive orders pertaining thereto. In January, 1919 this license was revoked, and all of the petitioner's assets, including its books of account and records, were seized by the Alien Property Custodian, who designated William C. Scheide as his manager of enemy insurance companies and directed him to complete liquidation of the petitioner as one of many enemy and ally of enemy insurance companies. The officers of the petitioner had no power over the liquidation and were not permitted to see the books of account or the reports of liquidation. Acting under instructions of the Commissioner of Internal Revenue, the Alien Property Custodian caused his agents to prepare the petitioner's income tax return for 1918 and to file it with the collector in New York City in June, 1919. This return was not signed nor sworn to. Later in 1919 the Commissioner made an assessment of $6,-261.34 against the petitioner for the year 1918, but this assessment was abated on April 9, 1920. The petitioner's books of account and records held by the Alien Property Custodian were available for inspection by federal revenue agents, and during 1921 two of these agents made an examination of them for the years 1917 to 1920. Upon the basis of their report the Commissioner determined in 1921 that no tax was due from the petitioner for the year 1918. During the year 1921, the Alien Property Custodian turned over to a representative of the petitioner all of its property in his hands except the books of account and records for the period of license and liquidation. On March 9, 1934 the Commissioner prepared for the petitioner an income and profits tax return for the year 1918, and on April 10, 1934 a notice of deficiency in tax of $83,709.57 was mailed to the petitioner at Sofia, Bulgaria. This notice stated that computation of the tax liability had been made in 1922. The petitioner promptly appealed to the Board of Tax Appeals, where the only disputed issue concerned the statute of limitations.

Under section 250(d) of the Revenue Act of 1918, 40 Stat. 1082, 1083, the tax had to be assessed and collection thereof begun "within five years after the return was due or was made," except in the case of false or fraudulent returns. Under the 1921 Act, § 250(d), 42 Stat. 264, 265, the five year period for assessment and collection of taxes imposed by the 1918 Act begins when "the return was filed" but in the case of "a failure to file a required return" the amount of the tax due may be determined, assessed, and collected and a suit for collection may be begun at any time after the tax becomes due. Similar provisions were carried forward into the 1924 Act, 43 Stat. 299, and are now in force as sections 277 (a) (3), and 278(a) of the 1926 Act, 44 Stat. 58, 59.

The petitioner contends that the return filed in 1919 at the direction of the Alien Property Custodian set running the five year period of limitation. The respondent replies that the Custodian had no statutory authority to file such a return and, in any event, it was a nullity because not signed and sworn to. See Lucas v. Pilliod Lumber Co., 281 U.S. 245, 50 S.Ct. 297, 74 L. Ed. 829, 67 A.L.R. 1350. Consequently, the respondent maintains that this is a "no return" case governed by section 278(a), 44 Stat. 59.

■■ This section clearly presupposes that the taxpayer was under a duty to file a return and has failed to perform it. The first question, therefore, is whether the petitioner was under such a duty with respect to the year 1918. Throughout that year the petitioner was acting under a license issued pursuant to section 4 of the Trading with the Enemy Act, 40 Stat. 413, 50 U.S. C.A.Appendix, § 4. Its property was not formally seized until January, 1919. Seizure of an alien's property under the Trading with the Enemy Act divested the alien owner of every right in respect of property or money so seized, and passed title thereto to the United States for such disposition as the Congress might thereafter see fit to make. Cummings v. Deutsche Bank, 300 U.S. 115, 120, 57 S.Ct. 359, 81 L.Ed. 545. Hence, income derived from an alien's property after seizure was not the alien's income, but like the principal, belonged to the United States. It is quite inconceivable that an alien was under any duty to file a tax return concerning such income so long as it continued to be held by the United States. In Krausz v. United States, Ct. Cl., 14 F.Supp. 291; Id., 15 F.Supp. 351, it was held that no federal taxing statute applied to property seized by the Alien

78

Property Custodian except as specifically stated in the Settlement of War Claims Act of 1928, 45 Stat. 276, § 18, 50 U.S.C.A. Appendix, § 24. Compare Kahle v. Commissioner, 8 Cir., 43 F.2d 61, cert. denied, 282 U.S. 892, 51 S.Ct. 106, 75 L.Ed. 786, with respect to the Act of March 4, 1923, 42 Stat. 1516, § 2, 50 U.S.C.A. Appendix, § 24 note. But the tax in suit involved income accruing before the petitioner's property was seized. During 1918 the petitioner still owned its assets, though it was operating under very stringent license provisions. We do not think the licensing can be deemed equivalent to seizure. Therefore we believe that the petitioner was required to file a tax return for 1918. Such return, however, was not due until March 15, 1919, and before that date the petitioner's property, including its books of account and records, had been seized. The stipulation of facts discloses that during the Custodian's period of possession of the petitioner's property the officers of the petitioner were not permitted to see the books of account or the reports of liquidation, and that when the property was returned to a representative of the petitioner in 1921 the books of account and records for the period of license and liquidation were, and still are, retained by the United States. Hence it has never been possible for the petitioner to prepare and file a return of its 1918 income.

While literally there has been "a failure to file a return," that phrase as used in section 278(a) cannot reasonably be interpreted to include a failure caused by the Government itself through seizure of the taxpayer's records. The obvious purpose of the section was to give the revenue officials unlimited time to assess and collect taxes in cases where the necessary data for determining the amount of the tax was lacking because of the taxpayer's fault in failing to supply it in the form of a return. The section should not be construed to cover a case where the United States has obtained the necessary data by seizure of the taxpayer's books, and has made it impossible for him to file a return by denying him access to them. In the case at bar the Commissioner had computed the petitioner's liability in 1922, and based his 1934 deficiency notice on that very computation; he had ample time to make the assessment for 1918 within the normal five year period. In Stearns Co. v. United States, 291 U.S. 54, 62, 54 S.Ct. 325, 328, 78 L.Ed. 647, the

Supreme Court approved the principle that "A suit may not be built on an omission induced by him who sues." There the principle was applied to prevent a taxpayer from relying on the statute of limitations. We believe it is equally applicable to prevent the United States from avoiding the statute. Hence section 277(a) (3), 44 Stat. 58, was applicable and barred the 1934 deficiency assessment. That being so, we need not consider the effect of the unsigned return filed at the direction of the Alien Property Custodian, nor the effect of the abated assessment.

The Board of Tax Appeals seems to have relied upon the decision of the Court of Claims in Krausz v. United States, 14 F.Supp. 291, to which we have already alluded. That case went on the theory that the return of seized property was an act of grace and that the Settlement of War Claims Act required taxes computed as if there had been no seizure to be retained by the Alien Property Custodian out of the property returned. We are unable to see the applicability of that decision to the case at bar. Here the petitioner's property was returned during 1921, presumably pursuant to the Act of June 5, 1920, 41 Stat. 977, amending Trading with the Enemy Act § 9, 50 U.S.C.A. Appendix, § 9 note. The original Trading with the Enemy Act contained no reference to the payment of taxes. The Appropriation Act of July 1, 1918, 40 Stat. 645, 646, provided that taxes lawfully assessed against property held by the Alien Property Custodian should be paid out of such property and, if that be insufficient, should be charged thereto and "paid out of any other moneys or properties required from the same enemy or ally of enemy." Prior to the return of the petitioner's property the Commissioner had abated his first assessment and had determined in 1921 that no tax for 1918 was due from the petitioner; hence there was no tax chargeable against the property and no sum which the Alien Property Custodian should have retained before returning it. Moreover, in the present case any question of the power of the United States to retain for taxes part of the seized property is irrelevant; here the question is whether there was a duty upon the taxpayer to file a return for 1918 and default in that duty. Such a duty did exist, but for reasons already stated there was no default of which the United States can take advantage. Hence the power to assess the tax did not continue

after March 15, 1924. The decision of the Board of Tax Appeals is reversed.

CHASE, Circuit Judge (dissenting).

My brothers have treated what may be a good excuse for the taxpayer's failure to file on time its income and profits tax return for the year 1918 as the equivalent, as a condition precedent to the putting in operation of the statute of limitations upon the assessment and collection of taxes due, of the actual filing of a return. With all deference, I cannot follow the facts that far to reach such a legal result.

We are not dealing with any penalty for failure to file a return but simply with the applicability of a statute of limitations and that depends upon what restriction the United States has itself imposed on its freedom of action. Congress need not have provided for any limitation upon the time within which such taxes could be assessed and collected. It did, however, provide for a limitation in the event that a return was filed but only in that event. In so many words it left the government free to act at any time whenever a return was required and not filed.

A return in behalf of this taxpayer was clearly required. It has never filed one and that filed by the Alien Property Custodian was neither required nor, since it was not signed and verified by oath, could it serve to start the running of the statute. Lucas v. Pilliod Lumber Co., 281 U.S. 245–249, 50 S.Ct. 297, 74 L.Ed. 829, 67 A.L.R. 1350. So the situation of this taxpayer is that of one who has never filed any return, not even a tentative one. Though it does appear that it was refused access to its books of account after they were seized, there is no proof that the taxpayer ever requested any information expressly to enable it to file a return and, without that, it is hardly in a position to assert that it was prevented from filing one.

But however that may be, it was not prevented by any wrongful act of the government. In so far as there was any prevention that was but a result of the circumstance that its property and books of account were subject to seizure; coupled with the fact that they were seized and held in a way to make the seizure effective. That in no way violated any rights of the taxpayer or added to or detracted from its actual liability for the payment of taxes due for a period before the seizure. If it made it difficult, or even impossible, for it to file a return that would start the statute of limitations running upon the assessment and collection of those taxes, that was but a lawful consequence of the lawful seizure. Its effect had to be borne by the taxpayer just like that of any other interference with its own business resulting from the seizure and for which no redress was provided by law.

Because of this, the taxpayer is not entitled to be treated now any differently from any other who filed no return and did not create a starting point for the statute of limitations. Such a statute only applies when the conditions prescribed by Congress have been fulfilled. Lucas v. Pilliod Lumber Co., supra. Compare, Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542.

As the government owed the taxpayer no duty to so act or refrain from acting with reference to the seizure that the statute of limitations might be set in operation for the benefit of the taxpayer, so now it ought not to be deprived, on some theory that it was responsible for the taxpayer's failure to file a return, of its right to have its claim for taxes considered on the merits. Moreover, it ought not to be taken for granted that the taxpayer would have filed a return for 1918 even if there had been no seizure.

I would affirm the decision of the Board of Tax Appeals.