## STOCKSTROM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10744.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 14, 1950.

Decided March 29, 1951.

Prettyman, Circuit Judge, dissented.

Chase Morsey, St. Louis, Mo., for petitioner.

Loring W. Post, Sp. Asst. to the Atty. Gen., with whom Messrs. Ellis N. Slack and Lee A. Jackson, Sp. Assts. to the Atty. Gen., were on the brief, for respondent. Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., also entered appearances for respondent.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The Revenue Act of 1932 provided with respect to gift taxes an exemption or "exclusion" of $5,000 in the case of gifts other than of future interests in property. A gift tax return was not required of a donor whose gift fell within that exemption.[1]

On January 6, 1936, Louis Stockstrom established ten irrevocable trusts and made a gift of less than $5,000 to each; but, as the Commissioner of Internal Revenue was then ruling that gifts to trusts were gifts of future interests not entitled to the statutory exclusion, Stockstrom filed gift tax returns covering his gifts to the ten trusts, claimed no exclusions, and paid the taxes

1. Revenue Act of 1932, §§ 504 and 507, 26 U.S.C.A. Int.Rev. Acts, pages 585, 588:

"§ 504. Net Gifts.

"(a) General Definition. The term 'net gifts' means the total amount of gifts made during the calendar year, less the deductions provided in section 505.

"(b) Gifts Less than $5,000. In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the

first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

"§ 507. Returns.

"(a) Requirement. Any individual who within the calendar year 1932 or any calendar year thereafter makes any transfers by gift (except those which under section 504 are not to be included in the total amount of gifts for such year) shall make a return under oath in duplicate."

disclosed thereby. He attached to the tax returns copies of the declarations of trust. Had he claimed and been entitled to the exemption or exclusion, no taxes would have been due, for the reason that each gift was less than $5,000; and no gift tax returns would have been required.

Thereafter other taxpayers similarly situated tested the Commissioner's ruling that gifts to trusts were gifts of future interests by appealing to the Board of Tax Appeals. It was there held, in a number of such cases, that gifts to trusts were gifts of present interests in property to which the exemption or exclusion was applicable.

In response to the Commissioner's petition for review of one of these decisions, the Seventh Circuit handed down on February 22, 1937, an opinion in Commissioner of Internal Revenue v. Wells, 7 Cir., 88 F.2d 339, 341, in which it held that the trusts were the donees; that "They took immediate title to and possession of all the property from the donor; they put it to instant use for the directed purpose * * *" and, consequently, that such gifts are transfers of present interests.

In Commissioner of Internal Revenue v. Krebs, 90 F.2d 880, 881, decided by the Third Circuit on June 4, 1937, Krebs had established an irrevocable trust for each of his three children. The trustee was directed to use the income for the support, maintenance, benefit and education of the child until he reached the age of twenty-five. Unexpended income was to be paid directly to the beneficiary but no beneficiary had any right to the income until the trustee paid it to him. The donor, in making gift tax returns, deducted $5,000 from the value of each gift. The Commissioner held they were gifts of future interests and disallowed the exclusions. The Board of Tax Appeals held the gifts were of present interests. On appeal, the Third Circuit was of the opinion "that the gifts were gifts of a present interest, whether the test used be the nature of the interest which the donor gave, or the na-

ture of the interest which the trustees or the cestuis que trusts received." The court thought that, since the tax was imposed upon the donor and since in that case "the donor, after the gifts were made, had no longer any interest whatever, present or future, in the stock and funds donated, that the gifts were of a present interest." The court went on to say, however, that if the test be to determine the character of the interest of the donee, the trustees undoubtedly took a present interest, citing Commissioner of Internal Revenue v. Wells, supra.

Without petitioning the Supreme Court for certiorari (the appellant says, for the reason that the Solicitor General advised him the rulings were correct), the Commissioner "acquiesced" [2] in the Wells and Krebs decisions, thus instructing taxpayers and his own staff to regard them as precedents in the disposition of other cases.

By this acquiescence the Commissioner of Internal Revenue reversed his former ruling that gifts to trusts were gifts of future interests not entitled to an exclusion, and held that under the statute a gift to a trust is a gift of a present interest if the trustee immediately takes and enjoys the property.

Obviously, if this new ruling made in 1937 had been in effect in 1936, Stockstrom would have owed no gift taxes with respect to the gifts made to the ten trusts which he established in that year, and would not have been required even to file returns, as each gift was within the exempted amount. Consequently, on March 18, 1937, and February 4, 1938, Stockstrom filed claims for refund of the gift taxes paid for the calendar year 1936, pointing out that "No $5,000 exclusion was allowed as provided by Section 504(b) of the Revenue Act of 1932 for the gifts made by irrevocable trust agreement (a copy of which was attached to the 1936 gift tax return)." The Commissioner allowed the claims for refund and the Treas-

2. The expression simply means the Commissioner does not intend to seek further judicial review and is adopting the ruling as a precedent he will follow in other cases. Thus taxpayers are assured they can rely upon it without the danger of being forced to litigate the same question in their own cases.

ury returned to Stockstrom the sum of $4,218.61 which he had paid as taxes on the 1936 gifts.

Stockstrom made additional gifts to the trusts in 1937, filed gift tax returns and, relying upon the Wells case and the Commissioner's new ruling pursuant thereto, claimed an exclusion of $5,000 on each gift. On August 11, 1938, after examining the 1937 returns, the Deputy Commissioner of Internal Revenue wrote the taxpayer stating a small deficiency in his gift tax liability for 1937, resulting from an increase in the valuation of certain items and an error in addition; but the claim to exclusions was not disallowed.

During the year 1938 Stockstrom made still more gifts to the trusts, but as each was less than $5,000 he filed no gift tax return. No doubt he felt quite secure because of the judicial holdings that such gifts were of present interests, because of the Commissioner's acquiescence therein, and because of the Commissioner's conduct in refunding the 1936 payments and in approving the 1937 returns in which exclusions were claimed. And, if his 1938 gifts were of present interests as he had thus been assured they were, he owed no duty to file returns with respect to them as each was under $5,000.

The holdings of the Board of Tax Appeals, the courts, and subsequently the Commissioner of Internal Revenue that a gift to a trust was to the trust itself and not the beneficiary thereof were greatly to the advantage of the government in situations in which several beneficiaries took present interests, under one trust agreement, as only one exclusion of $5,000 was allowable since the trust itself was held to be the donee.

But the Commissioner was not satisfied with this advantage. He proposed to Congress that the Revenue Act of 1932 be amended so as to deny an exemption or exclusion to any gift made to a trust. In accordance with his suggestion there was inserted in the Revenue Act of 1938 a provision that the exclusion (then reduced to $4,000) should not apply to gifts in trust or of future interests in property. It was expressly provided that the denial of the exemption to gifts in trust should be applied to the computation of the tax for the calendar year 1939 and each calendar year thereafter, "but not the tax for the calendar year 1938 or a previous calendar year."[3]

The report of the Senate Finance Committee (S.Rep. No. 1567, 75th Cong., 3d Sess., p. 41; 1939–1 Cum.Bull. (Part 2) 779, 809) concerning the amendment of 1938 included the following: " * * * The committee is also proposing an amendment by which the exclusion would not apply to gifts in trust. The Board of Tax Appeals and several of the Federal courts[4] have held, with respect to gifts in trust, that the trust entities were the donees and on that account the gifts were of present and not of future interests. The statute, as thus construed, affords ready means of tax avoidance, since a donor may create

---

3. Revenue Act of 1938, § 505, 26 U.S.C.A. Int.Rev. Acts, page 1139:

"Sec. 505. Computation of net gifts.

"(a) Section 504(b) of the Revenue Act of 1932, relating to the computation of net gifts, is amended to read as follows:

" '(b) Gifts less than $4,000.—In the case of gifts (other than gifts in trust or of future interests in property) made to any person by the donor during the calendar year, the first $4,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.'

"(b) The amendment made by subsection (a) of this section shall be applied in computing the tax for the calendar year 1939 and each calendar year thereafter (but not the tax for the calendar year 1938 or a previous calendar year), but such amendment shall not be applied in any computations in respect of the calendar year 1938 and previous calendar years for the purpose of computing the tax for the calendar year 1939 or any calendar year thereafter."

4. It will be observed that the report said "The Board of Tax Appeals and several of the Federal courts have held * * *." This was literally true, but it was also true that no court had held otherwise, and the Commissioner had acquiesced.

any number of trusts in the same year in favor of the same beneficiary with a $5,000 exclusion applying to each trust, whereas the gifts, if made otherwise than in trust, would in no case be subject to more than a single exclusion of $5,000. The proposed change does not reduce the $4,000 specific exemption for gifts. The amendment will apply only when computing the tax for the calendar year 1939 and succeeding calendar years."

The Congress thus recognized the judicial interpretation of its 1932 Act and, instead of manifesting an intention to disagree with or disturb that construction, was careful to provide that the amendment should "be applied in computing the tax for the calendar year 1939 and each calendar year thereafter (but not the tax for the calendar year 1938 or a previous calendar year), * * *."[5]

In 1941—exactly when in that year the record does not disclose—a revenue agent investigating the income taxes of Louis Stockstrom discovered the facts and figures concerning the gifts in trust made in 1938 and observed that no gift tax return had been filed with respect to them. The revenue agent and Stockstrom's representative went together to see the head of the Federal Estate and Gift Tax Section of the Office of the Bureau of Internal Revenue in St. Louis, and directed his attention to the fact that no gift tax return had been filed covering the gifts made in 1938 by Stockstrom to the several trusts, each of which was under $5,000.

The Bureau official stated to the revenue agent and to Stockstrom's representative that, if a gift tax return had been filed by Stockstrom for the year 1938, there would have been no tax due. It followed, of course, that, if no tax was due because the gifts were within the exemptions, a tax return was not required to be filed. Because of this assurance given by the Commissioner's principal representative in St.

Louis in 1941, Stockstrom still did not file a gift tax return covering the 1938 gifts.

It was not until seven years later, and after the death of Louis Stockstrom, that another step was taken by the Commissioner. Under date of April 14, 1948, he suddenly reversed the position which he had taken ten years before concerning the Stockstrom trusts and issued a "ninety-day letter" addressed to Stockstrom's estate. In it the Commissioner said: "You are advised that the determination of the gift tax liability of Louis Stockstrom, Deceased, Rott Road, Kirkwood, Missouri, for the calendar year 1938, discloses a deficiency of $5,191.87 and penalty of $1,297.-97, as shown in the statement attached."

On May 24, 1948, a petition was filed with the Tax Court of the United States for a redetermination of the deficiencies set forth by the Commissioner in his ninety-day letter. An amended petition was filed October 11, 1949. These two pleadings showed the history of the matter much as we have given it.

The Tax Court stated the question before it to be "whether or not the petitioner is liable for the deficiency in gift tax for 1938 determined by the respondent." This, the Tax Court said, depended upon whether any of the beneficiaries received a present interest when the gifts were made to the ten trusts in 1938; and, as the petitioner had not introduced the trust instruments in evidence, the court had "no alternative but to approve the respondent's determination that the transfer made to the beneficiary of each trust was of a future interest with respect to which no exclusion is permitted by the statute." The case was brought here by a petition to review filed by Stockstrom's executor.

In other words, the Tax Court held, and the Commissioner argues here, that the controlling question is whether the beneficiaries took present or future interests; that the answer to the question depends upon the proper construction of the declar-

---

5. By § 454 of the Revenue Act of 1942, 26 U.S.C.A. § 1003(b), the provision of the 1938 Act that the exclusion should not apply to gifts in trust was made inapplicable in the case of gifts made during the calendar year 1943 and subsequent calendar years. Presumably this was because of the Supreme Court's decision in Helvering v. Hutchings, 1941, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909.

ations of trust; and that, as the trust agreements were not put in evidence by the petitioner, the presumption must be indulged that the Commissioner correctly construed the contracts as giving the beneficiaries only future interests.

This reversed position taken by the Commissioner in 1948 was based on the case of Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909, decided March 3, 1941. In that case the Supreme Court stated the question before it as follows: "The petition for certiorari presents the single question whether under § 504(b) of the Revenue Act of 1932, 47 Stat. 169, 247, the donor of property in trust for the benefit of numerous beneficiaries is entitled to a single gift tax exemption or exclusion to the extent of the first $5,000 or to separate exemptions of $5,000 for each beneficiary." The Court answered the question by holding that a gift to each beneficiary of a trust is entitled to the benefit of the $5,000 deduction unless the gift is of a "future interest," which § 504(b) excepts from the exemption otherwise allowed.[6] To the same effect were United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913, and Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917, also decided on March 3, 1941.

The question presented by this appeal is not, in our view, whether the Stockstrom declarations of trust gave the beneficiaries a present or a future interest in gifts thereunder. Even if it be assumed that these gifts were of future interests, it does not follow that the Commissioner had the power to assess a tax in the circumstances disclosed here. He had ruled in 1938 pursuant to judicial interpretation that a tax return was not required. He affirmed that ruling in 1941 and then waited until 1948 to claim that a tax was due. The question is whether the Commissioner was barred from asserting tax liability by limitation,

---

**6.** We have seen that throughout 1938 judicial opinion was unanimous in holding gifts in trust to be subject to the exemption of $5,000 and that the Commissioner's acquiescence made this the rule of his office. In 1939, however, the trend of decision began to go the other way and some federal courts of appeals held, in disagreement with the Wells and Krebs cases, that a gift to a trust is a gift to the beneficiaries of the trust; that whether it is to them a gift of a present or a future interest depends upon the interpretation of the instrument which created the trust; and therefore that in each case whether the exclusion applied depended upon the nature of the estate in the gift taken by the beneficiary. If the beneficiaries took present interests, there were as many exclusions as there were beneficiaries. These cases, all of which had to do with gifts made prior to January 1, 1939, were: Welch v. Davidson, 1 Cir., March 2, 1939, 102 F.2d 100; Rheinstrom v. Commissioner of Internal Revenue, 8 Cir., June 26, 1939, 105 F. 2d 642; McBrier v. Commissioner of Internal Revenue, 3 Cir., 108 F.2d 967, December 19, 1939, in which the Third Circuit repudiated what it had said on the subject in the Krebs case; Pelzer v. United States, March 4, 1940, 90 Ct. Cl. 614, 31 F.Supp. 770; and Hutchings v. Commissioner of Internal Revenue, 5 Cir., April 13, 1940, 111 F.2d 229.

The Seventh Circuit, however, continued to differ from the others mentioned above and on July 9, 1940, in United States v. Ryerson, 114 F.2d 150, 155, ruled on the question whether in case of a gift under a trust agreement only one exclusion of $5,000 is allowed for the trust as donee, or whether an exclusion is allowed for each of the beneficiaries as a donee. The court relied upon its own holding in the Wells case that, under the statute, each trust is a person and as such statutory person is the donee of a gift of a present interest in property which has been transferred to it; and concluded "that in respect to each gift to the trust only one exclusion of $5,000 is permissible, regardless of the number of beneficiaries of the trust." This conflict between the circuits was resolved by the Supreme Court in Helvering v. Hutchings, supra.

It is significant that in all these cases which were decided in 1939 and 1940 regarding gifts in trust prior to January 1, 1939, the Commissioner of Internal Revenue was actively asserting that the gift was to the trust and not to the beneficiaries and that therefore only one exclusion could be taken when a gift was made to a trust, no matter how many beneficiaries there were.

waiver or estoppel, or by the principle that one may not found a claim upon an omission which he himself induced.

It is provided by 26 U.S.C.A. § 1016 that gift taxes shall be assessed within three years after the return was filed, except that (b) "(1) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." There is thus no period of limitation concerning the power to assess a tax when the taxpayer has failed to file a return.

Stockstrom did not physically file a return for 1938, as we have seen. The question is, however, did he fail to file a return within the meaning of the limiting statute? Or, to put it another way, may the Commissioner in the circumstances of this case rely upon the failure to physically file a return as destroying the period of limitation? As the Court of Appeals for the Second Circuit said in Balkan National Insurance Co. v. Commissioner of Internal Revenue, 1939, 101 F.2d 75, 77: "This section clearly presupposes that the taxpayer was under a duty to file a return and has failed to perform it." The court also said in that case, 101 F.2d at page 78: "While literally there has been 'a failure to file a return,' that phrase as used in section 278(a) cannot reasonably be interpreted to include a failure caused by the Government itself through seizure of the taxpayer's records. The obvious purpose of the section was to give the revenue officials unlimited time to assess and collect taxes in cases where the necessary data for determining the amount of the tax was lacking because of the taxpayer's fault in failing to supply it in the form of a return. The section should not be construed to cover a case where the United States has obtained the necessary data by seizure of the taxpayer's books, and has made it impossible for him to file a return by denying him access to them." The court stated that in Stearns Company v. United States, 1933, 291 U.S. 54, 62, 54 S.Ct. 325, 328, 78 L.Ed. 647, the Supreme Court approved the principle that "A suit

may not be built on an omission induced by him who sues," and added " * * * There the principle was applied to prevent a taxpayer from relying on the statute of limitations. We believe it is equally applicable to prevent the United States from avoiding the statute."

It has already been made to appear that Stockstrom's failure to file a return for 1938 was due to the Commissioner's ruling, made in 1938 and reaffirmed as late as 1941, that none was required of him. The Commissioner therefore induced the omission which he now relies upon as giving him unlimited time within which to assess a tax. The law as to such a situation has long been established.

The Supreme Court said in Swain v. Seamens, 1869, 9 Wall. 254, 76 U.S. 254, 274, 19 L.Ed. 554: "Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim." The Swain case was one between private persons, but the same principle was later held to bind the United States: in United States v. Peck, 1880, 102 U.S. 64, 26 L.Ed. 46, the Supreme Court cited with approval the following sentence written by a New York judge: " * * * 'It is a sound principle that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned.' "

The principle was restated in expanded form by Mr. Justice Cardozo in Stearns Company v. United States, supra 291 U.S. at pages 61 and 62, 54 S.Ct. at pages 328, 78 L.Ed. 647: "The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him, in effect: "This is your own act, and therefore you are not damnified." ' Dolan v. Rodgers, 149 N.Y. 489, 491, 44 N.E. 167; and Imperator Realty Co. v. Tull, 228 N.Y. 447, 457, 127 N.E. 263; quoting West v. Blakeway, 2 Man. & G. 828, 839 [729, 751]. Sometimes the re-

sulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Imperator Realty Co. v. Tull, supra. A suit may not be built on an omission induced by him who sues. Swain v. Seamens, 9 Wall. 254, 274, 19 L.Ed. 554; United States v. Peck, 102 U.S. 64, 26 L.Ed. 46; Thomson v. Poor, 147 N.Y. 402, 42 N.E. 13; New Zealand Shipping Co. v. Societe des Ateliers, [1919] A.C. 1, 6; Williston, Contracts, Vol. 2, §§ 689, 692."

We conclude that Stockstrom's failure to file a return for 1938 was not the sort of failure contemplated by § 1016 of the Internal Revenue Code. In 1941 the Commissioner, who already had copies of the trust agreements, obtained from Stockstrom's books the facts and figures concerning the 1938 gifts. If he later decided, in view of Helvering v. Hutchings, that tax liability existed, he could have made a return for the taxpayer; indeed, it was the duty of the Commissioner's subordinate, the collector, to do so, 26 U.S.C.A. § 3612. This could and should have been done promptly, as performance of the duty ought not to have been postponed for years in order to prevent the statute of limitations from running.

As the Supreme Court said in Helvering v. Griffiths, 1943, 318 U.S. 371, 402, 63 S.Ct. 636, 653, 87 L.Ed. 843, in somewhat similar circumstances: "It would be a pity if taxpayers could not rely on this concurrent assurance from all three branches of the Government."

It has been well said that the government should always be a gentleman. Taxpayers expect, and are entitled to receive, ordinary fair play from tax officials. We regard as unconscionable the Commissioner's claim of authority to assess a tax in 1948 because of Stockstrom's failure to file a return for 1938, when the Commissioner himself was responsible for that failure.

Reversed.

PRETTYMAN, Circuit Judge (dissenting).

I reluctantly dissent from the judgment of my brethren in this case. I wish the law were as they find it to be, because it is my belief that the Government ought to set a high standard in its dealings and relationships with citizens and that the word of a duly authorized Government agent, acting within the scope of his authority, ought to be as good as a Government bond. But unfortunately, as I see it, a long line of cases almost without exception, beginning with the Couzens case in 1928 [1] and running down through Schafer v. Helvering [2] and beyond, establish the law otherwise. In the Schafer case, Judge Groner, writing for this court, said that wrongs between man and man which shock the conscience cannot affect the right of the sovereign to the full measure of a statute. "Whoever deals with the government," he wrote, "does so with notice that no agent can, by neglect or acquiescence, commit it to an erroneous interpretation of the law." [3] Many cases on the point are collected in Mertens's Law of Federal Income Taxation (1948 rev. ed.) at Sections 60.13–60.18.

I do not see that a revenue agent's statement to a taxpayer that the statute did not require a return to be filed is different from any statement by such an agent upon any question of statutory interpretation. And the Commissioner's about-face on the question of law here involved is not different from his change of mind on other points upon other occasions. The established rule is that in contemplation of law he was, under such circumstances, wrong the first time and the Government is not bound by his error.

I repeat that I wish the law were as the opinion of the court in this case holds it to be, but I am convinced that it is not.

1. James Couzens, 11 B.T.A. 1040.

2. 1936, 65 App.D.C. 292, 83 F.2d 317, affirmed, 1936, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101.

3. Id., 65 App.D.C. at 295, 83 F.2d at 320.