BERNARD I. SOMMER and JULIA S. SOMMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
SOMMER v. COMMISSIONER
Docket No. 9954-82
United States Tax Court
T.C. Memo 1983-196; 1983 Tax Ct. Memo LEXIS 590; 45 T.C.M. (CCH) 1271; T.C.M. (RIA) 83196; April 11, 1983. Bernard I. Sommer, pro se. William E. Bogner, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent has moved for summary judgment and for an award of damages in this case, in which petitioners' primary contentions are that wages paid in exchange for services provided by them are not taxable as income and that they have "negative wages" from their church. Petitioners were residents of Glenview, Illinois, at the time they filed their petition herein. For the tax years 1974, 1975, 1976, *593 and 1977, petitioners filed Forms 1040, modified by striking from the printed forms the statement that the forms were signed under penalties of perjury, with the Internal Revenue Service Center, Kansas City, Missouri. Petitioners timely filed returns for the years 1978 and 1979 with that Service Center. On February 12, 1982, respondent issued three notices of deficiency to petitioners.The three notices were based upon information shown on the face of the documents filed by petitioners. Respondent determined the tax due by disallowing a charitable contribution to petitioners' church equal to one-half of the wages reported for 1974 and disallowing offsets claimed by petitioners for "negative income [wages] from our church" for the years 1975 through 1979. The resulting deficiencies and additions to tax set forth in the three notices are as follows: Section
Section
Section
6653(a) [1]
6651(a)
6654
Name
Year
Deficiency
Negligence
Delinquency
Estimated Tax
Bernard I.
Sommer
1974
$2,957.23
$211.23
$593.22
$71.49
1975
4,037.69
201.88
762.14
149.57
1976
3,915.00
195.75
815.63
158.71
1977
4,266.00
213.30
899.10
139.95
Julia S. Sommer
1974
470.00
23.50
17.48
1975
384.00
19.20
.19
1976
334.00
16.70
1977
194.00
9.70
Bernard I.
Sommer &
1978
3,773.00
188.65
Julia S. Sommer
1979
4,050.00
202.50
*594 In an Amendment to Answer to Amendment to Petition, respondent corrected errors in the computation of the addition to taxes under section 6651(a) and increased amounts determined with respect to petitioner Bernard I. Sommer as follows: Amt. in Notice
Correct Amount
Additional Amt.
Year
of def. (22.5%)
(25%)
of Penalty
1974
$593.22
$659.14
$65.92
1975
762.14
846.82
84.68
1976
815.63
906.25
90.62
1977
899.10
999.00
99.90
No dispute has been raised with respect to the amounts used in respondent's computations. There is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Thus, summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure, is an appropriate means of disposing of this case. See Mintz v. Mathers Fund, Inc.,463 F.2d 495, 498 (7th Cir. 1972). Even if we accept petitioners' version of the facts as set forth in their affidavit in opposition to the motion, respondent's Motion for Summary Judgment *595 must be granted. Wages As Income
Petitioners argue that the wages they received during the taxable years are not income. They cite and misconstrue a number of cases, such as Brushaber v. Union Pacific Railroad Co.,240 U.S. 1 (1916), and Eisner v. Macomber,252 U.S. 189 (1920).Petitioners contend that there is no gain in compensation for labor because it is the result of an even exchange, and that an "excise" tax can only be levied on a "privilege." The propriety of taxing incomes from professions, trades, employments, or vocations was confirmed in the Brushaber case, and the Sixteenth Amendment to the Constitution established the right of Congress to tax incomes regardless of source and regardless of whether or not such tax is characterized as an excise tax. Arguments comparable to those made by petitioners here have been repeatedly rejected by this and other courts. See, e.g.,Reading v. Commissioner,70 T.C. 730 (1978), affd. 614 F.2d 159 (8th Cir. 1980); United States v. Buras,633 F.2d 1356, 1361 (9th Cir. 1980) (in which defendant's contention was rejected in affirming his criminal *596 conviction of failure to file tax returns); Rice v. Commissioner,T.C. Memo. 1982-129 (explaining specifically the errors in petitioners' reasoning). [2] Although petitioners devote ten pages of their Memorandum of Law in Support of Petitioners' Opposition to Respondent's Motion for Summary Judgment to this issue, we do not believe that any further discussion of it is justified. See Graf v. Commissioner,T.C. Memo. 1982-317. The So-Called "Negative Income"
Petitioners' other primary contention as to why they do not have taxable income is predicated upon an alleged vow of poverty taken by them.Their affidavit states: 3. We have taken vows of poverty *597 and confidentiality to our church, The Chapel of The Tolerants, We own no property; what property was once ours has been given to our church, pursuant to our vows. We have held no property of any kind since before the period covered by the deficiency notices herein. The parties have stipulated to documents purporting to show that the name "The Chapel of The Tolerants" was used in relation to certain vehicle registration and utility service accounts. Exhibits to the stipulation also include certain canceled checks and receipts showing purported donations by petitioners to The Chapel of The Tolerants. In their memorandum of law, petitioners claim that their payments of their wages earned from secular employers to their "church" were equivalent to a loss. They do not cite any authority for that proposition, however, but state: In any event, respondent's arguments are irrelevant as well as the matter of the "negative income" definition or concept or what you will. What is a genuine issue of material fact is that the positive amount paid to the church (the negative amount paid by the church) consisted of remuneration paid to the petitioners for the exercise of a common *598 right--not subject to an income (excise) tax. This was sufficiently dealt with in * * * [the section dealing with taxability of wages]. Petitioners' apparent reliance on their contentions as to the taxability of wages, rather than on an argument that their purported vow of poverty relieves them from income taxes, may be a recognition of the futility of their position with respect to the so-called "church." Respondent's motion is supported by affidavits from employers of petitioners establishing that payment of wages to petitioners was pursuant to employment of petitioners in their individual capacities, without any negotiations conducted by the purported church. These uncontradicted affidavits negate any argument that petitioners performed services as agents of the church. See Stephenson v. Commissioner,79 T.C. 995 (1982); McGahen v. Commissioner,76 T.C. 468, 479 (1981); Kelley v. Commissioner,62 T.C. 131 (1974); Graf v. Commissioner,supra.Although respondent's motion contains an extensive discussion of other evidence showing that petitioners' conduct is not consistent with their purported vow of poverty, *599 extensive discussion of this evidence is unnecessary in view of petitioner's total failure to suggest any reason for concluding that they lack such dominion or control over their earnings as to negate taxing those earnings to them as income. As stated in United States v. Basye,410 U.S. 441, 450 (1973): The principle of Lucas v. Earl [281 U.S. 111 (1930)], that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle, has been repeatedly invoked by this Court and stands today as a cornerstone of our graduated income tax system. * * * Except for the year 1974, petitioners did not claim that the amounts paid to their purported church were charitable contributions. Attached to their 1975 return was a statement that "our produce which we deliver unto our church must not be handled as a contribution to our church but as a negative wage paid us by our church." The expressed purpose of this theory is to avoid the limitation of charitable contributions deductions to 50 percent of adjusted gross income. See section 170(b)(1). Regardless of the percentage limitations, however, petitioners have presented *600 no facts that would suggest that The Church of the Tolerants would meet the test of qualification of a charitable organization, which would entitle petitioners to deduct payments to it. See sections 170(c)(2) and 501(c)(3); Stephenson v. Commissioner,supra.Petitioners have thus raised no genuine issue of fact as to their liability for taxes as determined by respondent. The "Returns" for 1974, 1975, 1976, and 1977
The validity of the "returns" filed by petitioners for the years 1974 through 1977 is an issue by reason of (1) petitioners' assertion that the deficiencies for those years are barred by the statute of limitations; (2) respondent's use of rate schedules applicable to separate returns of married persons in determining petitioners' tax liability for those years; and (3) respondent's determination of additions to tax for those years. Subsidiary issues are (a) whether obliterating the words "Under penalties of perjury" invalidates an otherwise valid return, and (b) whether respondent is estopped to assert the invalidity of the purported returns by his failure to promptly notify petitioners that the forms filed by them were unacceptable. In this *601 regard, it is noted that the 1978 and 1979 returns, filed by petitioners after respondent's position with respect to the forms filed for 1974 through 1977 was made known to petitioners, did not delete the language in question. Section 6065(a), in effect for the taxable years 1974 and 1975, provided: (a) Penalties of Perjury.--Except as otherwise provided by the Secretary or his delegate, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury. For taxable years beginning after December 31, 1976, with a minor immaterial change effective February 1, 1977, section 6065 provided: Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury. See also section 1.6065-1(a), Income Tax Regs. The failure to sign forms in accordance with section 6065 is the equivalent of a failure *602 to file returns required by other sections of the Internal Revenue Code, i.e., sections 6001, 6011(a), and 6061. United States v. Moore,627 F.2d 830, 834 (7th Cir. 1980). See also Cupp v. Commissioner,65 T.C. 68, 78-79 (1975), affd. in an unpublished opinion, 559 F.2d 1207 (3d Cir. 1977).
Petitioners contend that respondent is barred by the doctrine of "estoppel by silence," arguing that respondent had the obligation to send back to petitioners forms not properly verified. Petitioners' argument is based upon cases in which such returns were sent back to the taxpayers, e.g., United States v. Moore,supra;Gajewski v. Commissioner,67 T.C. 181 (1976), affd. 578 F.2d 1383 (8th Cir. 1978). They contend that a duty to do so is implied in a portion of the legislative history of a predecessor to section 6065, which states that permitting returns to be verified in lieu of the former requirement of an oath "will not only relieve the taxpayers of the burden of notarizing their returns but will expedite the processing by the Bureau of returns which might otherwise have to be sent back for compliance *603 with the oath requirement." S. Rept. No. 685, 81st Cong., 1st Sess. (1949), 1949-2 C.B. 283. The change referred to in that report, however, did not deal with individual income tax returns, which by prior law had been relieved of the oath requirement.The suggestion that returns "might" be sent back merely suggests the possibility of an administrative practice. Nothing in the law imposes an affirmative duty on respondent to send back to taxpayers forms not complying with specific statutory requirements, and the fact that such action was taken in some cases does not mean that it must be done in all cases. Certainly petitioners cannot claim to have relied on cases in which forms were sent back to the taxpayers, inasmuch as those cases, to the extent that they existed prior to the time petitioners filed their defective Forms 1040, would also demonstrate to petitioners that forms not bearing verification in accordance with the statute were not acceptable to respondent. Equitable estoppel is not a bar to the correction by respondent of a mistake of law, even if such mistake were affirmatively manifested. Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). *604 In any event, no equitable consideration would justify excusing petitioners' noncompliance with the law by reason of delay of respondent in discovering such noncompliance or acting on it. See Lillis v. Commissioner,T.C. Memo. 1983-142. This case is clearly distinguishable from Stockstrom v. Commissioner,190 F.2d 283 (D.C. Cir. 1951), cited by petitioners, where the taxpayer was precluded from filing returns because of the government's seizure of records necessary to such filing and the taxpayer had been given express assurance by an official of the Bureau of Internal Revenue that a gift tax return was not necessary. In this case, of course, there was no affirmative action by respondent, and there was an express statutory requirement of verification. Petitioners took the affirmative step of deleting the verification printed on the forms prescribed by respondent. They now claim that they had no knowledge of the requirement of verification, but they should have inquired before deleting language printed on an official form. In any event, they are presumed to have knowledge of the law. In the case of failure to file a return, the tax due may be *605 assessed at any time. Section 6501(c)(3). (In any event, with respect to the years 1975, 1976, and 1977, petitioners executed Forms 872, Consent to Extend the Time to Assess Tax, extending the time for assessment to April 30, 1982. [3] The notices of deficiency were thus timely as to those years without regard to whether or not the forms filed by petitioners for those years constituted returns.) The statute of limitations is thus not a bar to any deficiency in this case. As a result of petitioners' failure to timely file returns for the years 1974 through 1977, respondent computed their taxes for those years by applying rates applicable to married persons filing separately.Such computation must be sustained, inasmuch as rates applicable to married persons filing jointly are dependent upon timely filing of a joint return; if taxpayers have failed to file returns, the election to make a joint return may not be made after *606 respondent has issued a notice of deficiency to either spouse based on rates for separate returns and the spouse to whom such notice was issued has filed a petition with this Court. Section 6013(b); Durovic v. Commissioner,487 F.2d 36, 41-42 (7th Cir. 1973), affg. as to this issue and revg. in part 54 T.C. 1364 (1970); Thompson v. Commissioner,78 T.C. 558 (1982). Additions To Tax
Section 6651(a) imposes an addition to tax not exceeding 25 percent in the aggregate in the case of failure to file returns, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioners' deliberate modification of the return forms prescribed by statute and by regulations, resulting in a failure to file, cannot be reasonable cause. The addition to tax under section 6651(a) is sustained. See Cupp v. Commissioner,supra;Jarvis v. Commissioner,78 T.C. 646 (1982). The contentions of petitioners in this case are so lacking in merit that the 5 percent addition to tax for negligence is the minimal penalty that could properly be imposed, and it is appropriate here. See *607 Thompson v. Commissioner,supra at 563-564; Reiff v. Commissioner,77 T.C. 1169, 1180-1181 (1981); Cupp v. Commissioner,supra.[4] Compare Gajewski v. Commissioner,supra;Stephenson v. Commissioner,supra (in which the 50 percent addition to tax for fraud was imposed); United States v. Moore,supra;United States v. Buras,supra (in which criminal convictions were based on contentions similar to those made by petitioners here). The additions to tax under section 6651(a) and section 6653(a) may be cumulated if each is separately appropriate. Robinson's Dairy, Inc. v. Commissioner,35 T.C. 601, 608-609 (1961), affd. 302 F.2d 42 (10th Cir. 1962), dealing with the predecessors of the two sections.[5]
Respondent also determined an addition to tax under section 6654(a) for underpayment of estimated *608 tax against petitioner Bernard I. Sommer. Once the deficiency has been established, that section is mandatory unless petitioner can bring himself within certain exceptions not here applicable. Grosshandler v. Commissioner,75 T.C. 1, 21 (1980). Petitioners have not suggested that any such exception applies, and under the circumstances it seems that none could apply. That addition to tax is sustained. Damages
Respondent has moved for damages pursuant to section 6673. Section 6673, as in effect with respect to cases commenced prior to January 1, 1983, provided: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. In support of respondent's motion, he attaches copies of several items of correspondence sent to petitioners advising them at length of the legal authorities showing lack of merit in their *609 position and warning petitioners that respondent would request damages if petitioners persisted in their frivolous claims. The lack of merit in the claims permits an inference that the action was instituted merely for delay. Petitioners' persistence, and three consecutive motions for continuance filed (and denied) in relation to the motion for summary judgment, confirm that inference. Petitioners' memorandum in opposition to respondent's motion for summary judgment contains citations of authorities and arguments that, although erroneous, demonstrate petitioners' ability to research legal issues and comprehend them. Petitioners were fully advised of the certainty that their contentions would be rejected by the Court and the possibility that damages would be awarded. Under these circumstances, we conclude that damages in the maximum sum of $500 are appropriate. See Wilkinson v. United States,71 T.C. 633, 639-643 (1979); May v. Commissioner,T.C. Memo. 1981-119. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. See also Howell v. Commissioner,T.C. Memo. 1981-631; Funk v. Commissioner,T.C. Memo. 1981-506; Voelker v. Commissioner,T.C. Memo. 1981-67; Crisman v. Commissioner,T.C. Memo. 1980-361, affd. 642 F.2d 1212 (5th Cir. 1981); Thomas v. Commissioner,T.C. Memo. 1980-359; Brooks v. Commissioner,T.C. Memo. 1980-206; Hanson v. Commissioner,T.C.. Memo. 1980-197↩.
3. Petitioners' contention that the Consents were repudiated by respondent's determination that no returns were filed is summarily rejected. See Biggs v. Commissioner,440 F.2d 1, 3↩ (6th Cir. 1971), affg. a Memorandum Opinion of this Court.
4. See also Miller v. Commissioner,T.C. Memo. 1981-296; Wangrud v. Commissioner,T.C. Memo. 1980-162↩. 5. See also Anthony v. Commissioner,T.C. Memo. 1976-302↩.